# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 9, 2020

Lyle W. Cayce
Clerk

No. 19-30331

Greenbrier Hospital, L.L.C.,

*Plaintiff—Appellant*,

*versus*

Alex M. Azar, II, Secretary, U.S. Department of Health and Human Services,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:17-CV-6420

Before King, Costa, and Ho, *Circuit Judges*.

James C. Ho, *Circuit Judge*:

Judges must be faithful to text. But it is not always immediately obvious what fidelity to text requires. What should judges do, for example, when two provisions of the same law appear to conflict?

First and foremost, we attempt to reconcile the competing provisions in a manner that gives effect to each one. As the Supreme Court has explained, we show our respect for text by trying to give it full effect: "Our rules aiming for harmony over conflict . . . grow from an appreciation that it's

the job of [lawmakers]," not judges, "to write the laws and to repeal them." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018).

But what if the provisions simply cannot be reconciled? In that event, conflict with at least some text is unavoidable. Courts are "[c]ondemned by contradictory enactments to dishonor some bit of text." *Herrmann v. Cencom Cable Assocs.*, 978 F.2d 978, 983 (7th Cir. 1992) (Easterbrook, J.). But even so, respect for text requires that "judges must do the least damage they can." *Id.* And doing the "least damage" to the text means attempting to determine, if at all possible, which of the two conflicting provisions should govern in a particular case. "This is no departure from textualism," but rather a "recognition" that the law "has produced a series of texts that cannot coexist." *Id.*

Finally, if we are truly unable to discern which provision should control, "the proper resolution is to apply the unintelligibility canon . . . and to deny effect to both provisions." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 189 (2012). "After all, if we cannot make a valid choice between two differing interpretations, we are left with the consequence that a text means nothing in particular at all." *Id.* (cleaned up). But make no mistake: This is a last resort. "Courts rarely reach this result," because "outright invalidation is admittedly an unappealing course." *Id.* at 189–90.

This case illustrates these principles in operation. Faced with an irreconcilable conflict between two competing provisions, we are forced to make a choice. We choose to minimize damage to text by giving effect to the provision most obviously dictated by the context of the rule.

Here's the conflict: Federal regulations establish a compensation formula for the payment of certain health care providers—a formula that changes once a year. But there's a glitch. Each formula takes effect on

January 1 and runs until January 1 of the following year. That means that, on 364 days of every year, there's no conflict. But on January 1, two competing formulas purport to apply, making it unclear which one governs: the new one, or the one from the preceding year.

Now here's the solution that does the least damage to text: Consider the context of the rule. Under the previous rule, each formula ran from July 1 until June 30—so no conflict. When regulators amended the rule to track the calendar year instead, they wrote the new rule (presumably by accident) to run from January 1 until the following January 1. Context suggests we resolve the conflict by giving effect to the new, incoming formula each year on January 1, and not the old one from the preceding year—just as the previous rule gave effect to the new, incoming formula each year on July 1, and not the old one from the preceding year.

That is what the agency proposes. The district court agreed. And we do as well. Accordingly, we affirm.

## I.

In 1999, Congress directed the Department of Health and Human Services ("HHS") to establish and implement a new Medicare reimbursement scheme for inpatient psychiatric facilities ("IPFs"). Pub. L. No. 106-113, App. F § 124(a)(1), 113 Stat. 1501, 1501A-332 (1999).

HHS issued a final rule in 2004 setting forth the new reimbursement scheme for IPFs. That rule included a transition schedule from the old reimbursement system to a new one over a three-year period from 2005 to 2008. *See* 69 Fed. Reg. 66922, 66964–66, 66980 (Nov. 15, 2004). During the transition, IPFs would receive a "blended payment" based on a combination of the old reimbursement regime and the new one based on per diem rates. The particular combinations varied year by year, with a new formula coming into effect each year on July 1:

**§ 412.426    Transition Period.**

(a)(1) For cost reporting periods beginning on or after January 1, 2005 and on or before **June 30, 2006**, payment is based on 75 percent of the facility-specific payment and 25 percent is based on the Federal per diem payment amount.

(2) For cost reporting periods beginning on or after **July 1, 2006** and on or before **June 30, 2007**, payment is based on 50 percent of the facility-specific payment and 50 percent is based on the Federal per diem payment amount.

(3) For cost reporting periods beginning on or after **July 1, 2007** and on or before **June 30, 2008**, payment is based on 25 percent of the facility-specific payment and 75 percent is based on the Federal per diem payment amount.

(4) For cost reporting periods beginning on or after **July 1, 2008**, payment is based entirely on the Federal per diem amount.

*Id.* at 66980 (emphasis added).

In 2005, HHS published a correction to the final rule in the Federal Register. *See* 70 Fed. Reg. 16724, 16729 (Apr. 1, 2005). The agency explained that it had "inadvertently used incorrect dates for the cost reporting periods" in the 2004 rule. *Id.* at 16726. Under the 2004 rule, a new formula would take effect each year on July 1. But the agency had meant for the new formula to take effect each year on January 1—not July 1. *Id.* To fix the error, HHS adjusted the transition timeline to align with the calendar year.

But there's a problem. The corrected regulation issued in 2005 reads as follows:

**§ 412.426    Transition Period.**

(a)(1) For cost reporting periods beginning on or after January 1, 2005 and on or before **January 1, 2006**, payment is based on 75 percent of

No. 19-30331

the facility-specific payment and 25 percent is based on the Federal per diem payment amount.

(2) For cost reporting periods beginning on or after **January 1, 2006** and on or before **January 1, 2007**, payment is based on 50 percent of the facility-specific payment and 50 percent is based on the Federal per diem payment amount.

(3) For cost reporting periods beginning on or after **January 1, 2007** and on or before **January 1, 2008**, payment is based on 25 percent of the facility-specific payment and 75 percent is based on the Federal per diem payment amount.

(4) For cost reporting periods beginning on or after **January 1, 2008**, payment is based entirely on the Federal per diem amount.

*Id.* at 16729 (emphasis added).  As HHS explained in the preamble, the amendment to the rule "does not reflect a change in policy, rather, it conforms the regulation text to the actual policy."  *Id.* at 16726.

But in shifting the dates to align with the calendar year, the 2005 amendment introduced what appears to be an unintended error.  The governing formula each year runs not from January 1 to December 31, but from January 1 to January 1 of the following year.  As a result, a single compensation formula governs 364 out of 365 days each year.  But on January 1, the rule imposes two conflicting formulas:  the new formula that governs the new year, but also the previous formula from the preceding year.  For example, a cost reporting period beginning on January 1, 2006, appears to be eligible for *both* the 25% per diem rate *and* the 50% per diem rate—an obvious problem because presumably an IPF can be reimbursed under only one formula per year.[1]

---

[1] Further adding to the confusion, the Office of the Federal Register omitted the correction for subsection (a)(4) from the 2005 edition of the Code of Federal Regulations. Under the CFR version, the 75% per diem rate still applies to cost reporting periods

No. 19-30331

Greenbrier Hospital, an IPF, claims that this January 1 glitch means it now gets to *choose* which formula it wishes to use to determine its compensation from the federal government—either the new incoming formula or the old one from the preceding year.  Based on that theory, Greenbrier submitted a reimbursement claim seeking compensation at the 75% rate—that is, the one from the preceding year—for the period from January 1, 2008 to December 31, 2008.

The Centers for Medicare & Medicaid Services ("CMS"), which administers HHS's reimbursements, rejected Greenbrier's claim and paid it at the post-transition, 100% per diem rate.  So Greenbrier filed an administrative appeal with the Provider Reimbursement Review Board.  The Board determined that Greenbrier was entitled to the 75% per diem rate, and therefore reversed the initial CMS decision.  But the CMS Administrator reversed the Board's decision *sua sponte*, concluding that the 100% per diem rate governs.

Greenbrier sought judicial review of the Administrator's decision. The district court granted summary judgment to the government.  It determined that, given the conflicting reimbursement schemes, the regulation was ambiguous, and that the Administrator's interpretation of the regulation was reasonable and therefore warranted *Auer* deference.

---

beginning on or before January 1, 2008, consistent with the text of the Federal Register. But only those cost reporting periods that begin on or after July 1, 2008—rather than January 1, 2008—trigger the 100% per diem rate. The misprint thus leaves a six-month gap for cost reporting periods beginning after January 1, 2008, but before July 1, 2008.

Contrary to Greenbrier's argument, the text of the Federal Register, and not the misprint in the CFR, controls. The CFR is a reproduction of regulations that agencies promulgate in the Federal Register. *See* 44 U.S.C. § 1510(a). So when a conflict between the two exists, we look to the rule's original publication—just as we do when a conflict exists between the Statutes at Large and the United States Code. *See U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 448 (1993).

Greenbrier now appeals.  We review the district court's grant of summary judgment de novo. *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2019).

## II.

Ordinarily, we try to reconcile potentially conflicting provisions by attempting to read the text in harmony.  But that is not possible here.  The competing formulas were promulgated at the same time, cover the same topic, and are directed to the same end.  Yet they are mutually exclusive. They collide full-on.  The parties agree that the regulations cannot logically be construed to simultaneously impose two different payment formulas for the same services. *See* SAMUEL JOHNSON, 1 THE HISTORY OF RASSELAS 51 (1759) (inconsistent statements "may both be true," but they "cannot both be right").

Our only remaining options, then, are either (1) do the least damage to text, by choosing which of the two competing provisions to give effect, or (2) if it is not possible to identify a principled basis for choosing one provision over the other, then deny effect to both provisions.  As noted, "outright invalidation is admittedly an unappealing course."  SCALIA & GARNER, READING LAW at 190.  Where possible, we should do "the least damage" to the text by giving effect to at least one of the competing provisions. *Herrmann*, 978 F.2d at 983.

And we can do so here.  Context makes clear that we should construe the 2005 rule to give effect to the new formula, and not the formula from the preceding year, when presented with a cost report that begins on January 1. That is how the previous rule worked:  Under the express terms of the 2004 rule, the new formula would take effect at the beginning of each July. *See* 69 Fed. Reg. at 66980. *See also*, *e.g.*, *Ross v. Blake*, 136 S. Ct. 1850, 1857–58 (2016) (consulting statutory "precursor" for context).  We see no reason not to construe the 2005 rule the same way:  The new formula should take effect

at the beginning of each calendar year, just as it did at the beginning of July each year. After all, as HHS explained, it was revising the 2004 rule simply because it "inadvertently used incorrect dates" by starting the new formulas each year on July 1, rather than on January 1 as originally intended. 70 Fed. Reg. at 16726. Moreover, HHS made clear that "[t]his correction does not reflect a change in policy, rather, it conforms the regulation text to the actual policy." 70 Fed. Reg. at 16726.[2]

Greenbrier responds that the 2005 rule should be construed to authorize any cost report that begins on January 1, 2008, to be reimbursed under *either* the new formula *or* the formula from the preceding year—whichever one *Greenbrier* chooses. We disagree.

To begin with, giving IPFs the option to choose would contradict the express statement that the 2005 rule effects no substantive change in policy.

What's more, there is no basis anywhere in the text of the rules for giving Greenbrier the choice of formula. Tellingly, during oral argument, Greenbrier's counsel was unable to provide any textual support for the proposition that HHS meant to make a "one day only" offer to medical providers to choose between two competing compensation formulas. That is unsurprising. For there is no greater textual basis for giving the choice of formula to the provider, rather than to HHS. Come to think of it, there is no greater textual basis for giving the choice to *anyone*, rather than, say, to simply impose the formula that results in greater compensation (to favor beneficiaries) or lesser compensation (to favor taxpayers). The text of the rule is entirely indeterminate on all of these questions. It would make more

---

[2] Our conclusion is further confirmed by subsequent preambles in the Federal Register, which make clear that the new formula applies on January 1 of each year. *See* 71 Fed. Reg. 27040, 27042 (May 8, 2006); 72 Fed. Reg. 25602, 25603 (May 4, 2007); 73 Fed. Reg. 25709, 25710–11 (May 7, 2008).

sense to deny effect to both payment formulas—but of course Greenbrier does not make that argument.

\* \* \*

In sum, we cannot resolve the conflict, so we limit the damage to text by applying the new incoming rule on January 1, rather than the old rule from the preceding year.  That is what context indicates.  It is what the agency proposes.  And it is what the district court permitted.  Accordingly, we affirm.