# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 16, 2022

Lyle W. Cayce
Clerk

No. 21-40309

Brian Burbridge,

*Plaintiff—Appellant*,

*versus*

CitiMortgage, Incorporated,

*Defendant—Appellee*.

Appeal from the United States District court
for the Eastern District of Texas
USDC No. 4:19-CV-647

Before King, Graves, and Ho, *Circuit Judges*.
James C. Ho, *Circuit Judge*:

We construe contracts as we do statutes—in a manner faithful to the text. So if a contract includes a grace period, we enforce the grace period. If a lender sets a deadline for payment, but allows the borrower to make that payment anytime "in the month in which it is due," then the borrower may make that payment anytime in the month in which it is due.

That's exactly what CitiMortgage offered the borrower here—a deadline accompanied by a grace period. Yet CitiMortgage nevertheless contends that we should ignore the grace period.

No. 21-40309

Notably, this is not the first time CitiMortgage has presented this atextual plea to a federal court.  It did so in at least one previous case, involving the same language in a nearly identical loan agreement.  The court there rejected the argument and faithfully enforced the grace period—as fidelity to text requires.  *See Blankenchip v. CitiMortgage, Inc.*, 2016 WL 4494465 (E.D. Cal. Aug. 26, 2016).  Yet CitiMortgage did not disclose that ruling in these proceedings, either before the district court or on appeal.

Respect for text means that we must respect the grace period.  The district court reached the contrary conclusion.  Accordingly, we reverse.

**I.**

Approximately ten years after receiving a home loan from CitiMortgage, Brian Burbridge experienced financial difficulties and defaulted on his loan.  So Burbridge applied for a loan modification.

In response, CitiMortgage mailed Burbridge an offer to participate in a Trial Period Plan ("TPP").  The TPP provided that "[t]he terms of this offer are accepted and the terms of your [TPP] are effective on the day you make your first trial period payment, provided you have paid it on or before the last day of [January 2019]."

Burbridge effectively accepted the terms of the TPP when he made the first trial period payment of $1,293.66 by January 18, 2019.

The TPP also spelled out exactly what Burbridge needed to do to successfully complete the trial period.  It stated that, "[i]f you successfully complete the [TPP] by making the required payments, you will receive a permanent modification with an interest rate of 6.375% which will be fixed for 480 months from the date the modification is effective."  It explained that, "[t]o successfully complete the [TPP]," Burbridge must make three monthly payments of $1,293.66 by January 1, February 1, and March 1.  It also made

No. 21-40309

clear that "TIME IS OF THE ESSENCE." And in bold lettering, the TPP promised that "**we will not conduct a foreclosure sale**" so long as Burbridge satisfied these terms.

The TPP also included language specifying that Burbridge's payments would be deemed timely so long as they were made within the month when due. It stated that, "[i]f you do not make the specified trial period payments in full in the month when due, you will not qualify for a permanent modification." Directly below the specified deadlines, it stated in bold lettering: "**We must receive each payment in the month in which it is due.**" And elsewhere it made clear that "[i]f you fail to make the first trial period payment during the month in which it is due, this offer will be revoked and foreclosure proceedings may continue."

In addition, the TPP included a provision expressly contemplating that Burbridge might make multiple payments within the same month. It stated that CitiMortgage "may hold the trial period payments in an account until sufficient funds are in the account to pay each of [Burbridge's] monthly trial period payment obligations."

The parties do not dispute that Burbridge made weekly payments of roughly $350 beginning on December 14, 2018 and ending on March 29, 2019. Consequently, each of Burbridge's three aggregate payments of $1,293.66 were completed "in the month in which it [wa]s due," albeit not by the first day of each month. (In fact, Burbridge altogether paid $270 over what the TPP required.)

But despite the fact that Burbridge made his final payment in compliance with the stated time period, CitiMortgage sent him a letter informing him that he was "ineligible" for the loan modification because he failed to comply with the terms of the TPP. CitiMortgage then posted Burbridge's property for foreclosure.

No. 21-40309

Burbridge filed suit against CitiMortgage in state court, asserting claims for, *inter alia*, breach of contract. CitiMortgage removed to federal court.

The district court granted summary judgment to CitiMortgage. It declined to give force to the grace period provisions and accordingly concluded that Burbridge failed to comply with the TPP's payment deadlines. Burbridge timely appealed.

## II.

"This court reviews a district court's grant of summary judgment *de novo*, applying the same standards as the district court." *Johnson v. World Alliance Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016). Summary judgment is granted when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To establish a breach of contract claim, Texas law requires Burbridge to show: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007).

CitiMortgage contends that the TPP is not a valid binding contract. But the text of the TPP makes clear that CitiMortgage intended to be bound by the terms of the TPP upon Burbridge's performance: "If you successfully complete the [TPP] by making the required payments, you will receive a permanent modification with an interest rate of 6.375% which will be fixed for 480 months from the date the modification is effective." Elsewhere the TPP stated: "If you make your new payments timely **we will not conduct a**

**foreclosure sale**." And it expressly defined the terms of acceptance: "The terms of this offer are accepted and the terms of your [TPP] are effective on the day you make your first trial period payment, provided you have paid it on or before the last day of [January 2019]." Accordingly, we have no difficulty concluding that an enforceable contract was created on January 18, 2019, when Burbridge completed the first trial period payment of $1,293.66.

Alternatively, CitiMortgage argues that Burbridge failed to comply with the TPP's requirement that he make payments "in a timely manner." As CitiMortgage contends, the TPP establishes monthly payment deadlines of January 1, February 1, and March 1, 2019, and Burbridge did not meet these deadlines.

But the TPP also establishes a grace period. It accepts payment so long as it is made "in the month in which it is due." Neither the TPP nor the parties use the term "grace period" to describe this language. But that is plainly what the text contemplates. And no one disputes that Burbridge's payments comply with the governing grace periods.

CitiMortgage responds that we should ignore the grace period because it irreconcilably conflicts with the monthly deadlines set forth in the TPP, as well as the express statement that "time is of the essence."

But we see no conflict. Grace periods are common features of contracts. They are based on a simple premise: In the real world, there are deadlines, and there are *deadlines*. Some deadlines cannot be missed, while other deadlines operate more as flexible guidelines than rigid mandates. *See, e.g.*, *Lindsey v. Bio-Med. Applications of La., L.L.C.*, 9 F.4th 317, 321 (5th Cir. 2021) ("As anyone who has ever worked in an office environment can attest, there are real deadlines and hortatory ones—and everyone understands the difference between the two."). Grace periods facilitate contractual relationships by making clear which deadlines are aspirational and which are

mission-critical.  So the grace period at issue here presents no conflict with the TPP's stated deadlines.  To the contrary, grace periods and deadlines co-exist by design.

Nor do we see any conflict between the grace period and the statement that "time is of the essence."  That statement simply conveys that timing is important to the lender, so borrowers should expect that the lender will rigorously enforce compliance with the stated grace periods.

And even if CitiMortgage could establish an irreconcilable conflict between the grace period and the stated monthly deadlines, it would still need to articulate a theory as to why we should favor one set of provisions over the other.

When different provisions of a legal text cannot be reconciled, we must decide which text to enforce and which to ignore.  In such cases, "conflict with at least some text is unavoidable." *Greenbrier Hosp., L.L.C. v. Azar*, 974 F.3d 546, 547 (5th Cir. 2020).  So "respect for text requires that 'judges must do the least damage they can.'"  *Id.* (quoting *Herrmann v. Cencom Cable Assocs.*, 978 F.2d 978, 983 (7th Cir. 1992)).

CitiMortgage has offered no reason why favoring the monthly deadlines and ignoring the grace period would "do the least damage" to the text of the TPP.  *Id.*  That's fatal to CitiMortgage's position in this case. Because "if we are truly unable to discern which provision should control, the proper resolution is to apply the unintelligibility canon and to deny effect to both provisions." *Id.* (cleaned up).  That is, we would ignore the monthly deadlines as well as the grace period—and thus reverse accordingly.

\* \* \*

Burbridge met his obligations under the TPP by making timely payments.  CitiMortgage, by contrast, violated its obligations by refusing to

No. 21-40309

grant the permanent loan modification and instead proceeding with foreclosure.

Accordingly, we reverse and remand for further proceedings.