# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 6, 2018

Lyle W. Cayce
Clerk

————

No. 17-10914

————

CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, Syndicate Nos. 2003, 1414, 0510, 4472, 1183, 1200, and 4444, Subscribing to Policy Number NJL440003612,

> Plaintiff - Appellee

v.

LOWEN VALLEY VIEW, L.L.C.; PANADE II, LIMITED, doing business as Hilton Garden Inn,

> Defendants - Appellants

————————————

Appeal from the United States District Court
for the Northern District of Texas

————————————

Before CLEMENT, HIGGINSON, and HO, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

An insurance underwriter brought this suit seeking a declaratory judgment that it owed no coverage under a commercial property insurance policy. The insured counterclaimed for declaratory judgment, breach of the insurance contract, and violations of the Texas Insurance Code. The district court granted summary judgment in favor of the insurer on all claims, and we affirm.

No. 17-10914

I.

Defendants Lowen Valley View, LLC and Panade II Limited (collectively, Lowen Valley) own and operate a Hilton Garden Inn in Irving, Texas. Plaintiff Certain Underwriters at Lloyd's of London, Syndicate Nos. 2003, 1414, 0510, 4472, 1183, 1200, and 4444, Subscribing to Policy Number NJL440003612 (Lloyd's) issued Lowen Valley a commercial property insurance policy for the period from June 2, 2012 to June 2, 2013. In November 2014, a Lowen Valley employee "noticed that the shingles on the top of the hotel looked bad" and called a roofing contractor to investigate. The contractor found evidence of significant hail damage.

On December 29, 2014, Lowen Valley notified the company's insurance agent that the hotel roof had suffered hail damage. The agent filed a "Property Loss Notice" with Lloyd's the same day. The notice listed Lowen Valley's "Date of Loss" as June 13, 2012.  The agent apparently based the June 2012 date of loss on a weather history report obtained by Lowen Valley's roofing contractor. The report listed nine hail events of varying severity occurring "[a]t location" between January 2006 and December 2014.

After receiving the claim, Lloyd's sent an adjuster, Derek Phipps, to inspect the property. Phipps concluded that the roof would need to be replaced, and estimated a total repair cost of $429,225.41. On March 2, 2015, Lloyd's, through another adjuster, sent Lowen Valley a "reservation of rights" letter, which stated that "potential coverage issues may exist."

After sending the reservation of rights letter, Lloyd's commissioned Haag Engineering to prepare a report—what would become the first of three— analyzing Lowen Valley's claim. In this first report, Haag confirmed that the hotel had suffered hail damage and concluded that "the *most recent* hailstorm with hailstones large enough to cause the damage [Haag] observed was on June 13, 2012." (emphasis added). At Lloyd's request, Haag also completed a

2

No. 17-10914

second report. This time, Haag stated that its previous report had "concluded that the observed damage *most likely* occurred on June 13, 2012." (emphasis added).

On February 18, 2016, Lloyd's denied Lowen Valley's claim. The same day, Lloyd's filed this suit seeking a declaratory judgment that it owed no coverage for Lowen Valley's hail damage claim. Lowen Valley counterclaimed for declaratory judgment, breach of the insurance contract, and violations of the Texas Insurance Code.

Haag prepared two more documents after Lloyd's sued. Haag's third report "conclude[d] that it is unlikely that hail only fell at this location one time." The report identified four dates for which both National Weather Service hail reports and third-party radar data suggested that hail greater than one inch in diameter fell in the vicinity of the hotel. Finally Haag produced a "letter to clarify statements made in [its] past reports regarding dates of hailfall and potential damage." The letter explained that "a single sentence in the June report inadvertently referred to June 13, 2012, as the 'most likely' date that damage occurred instead of the 'most recent.'" Haag averred that it never intended "to suggest that June 13, 2012, was the known date or the only date that dents/damage occurred at this property," and, to the contrary, "[m]eteorological study . . . identifies additional dates in which conditions were conducive to hail at the site prior to June 2012."

Lloyd's moved for summary judgment on all claims before the district court. The court granted Lloyd's motion in full, and this appeal followed.

## II.

The district court granted summary judgment on Lloyd's declaratory judgment claim for two, independent reasons: (1) Lowen Valley failed to meet its burden to offer evidence that would allow a trier of fact to segregate covered losses from non-covered losses, and (2) Lowen Valley failed to provide prompt

No. 17-10914

notice of its loss, and this delay prejudiced Lloyd's as a matter of law. We affirm on the first ground, and do not reach the second.[1]

In this diversity case, we review the district court's grant of summary judgment de novo, applying Texas law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 388 (5th Cir. 2017). Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," summary judgment remains appropriate if the non-movant's evidence is "merely colorable" or "not significantly probative." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986).

In Texas, insurance policies are contracts subject to the rules of contract construction. *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000). "[W]hen an insurance policy is ambiguous or inconsistent, the construction that would afford coverage to the insured must govern." *Id.* The elements of a breach of contract action under Texas law are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)). The insured bears the burden of establishing that its claim is covered by the policy. *Wells v. Minn. Life Ins. Co.*, 885 F.3d 885, 890 (5th Cir. 2018).

---

[1] Lowen Valley also appeals certain evidentiary rulings. Because the challenged evidence pertains only to the notice issue, we decline Lowen Valley's invitation review these rulings.

No. 17-10914

An insurer is liable only for losses covered by the policy. Accordingly, "[w]hen covered and excluded perils combine to cause an injury, the insured must present some evidence affording the jury a reasonable basis on which to allocate the damage." *Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 601 (Tex. 1993); *accord Fiess v. State Farm Lloyds*, 392 F.3d 802, 807-08 (5th Cir. 2004). If the insured falls short of meeting this burden, the insurer is entitled to summary judgment. *See Hamilton Props. v. Am. Ins. Co.*, 643 F. App'x 437, 442 (5th Cir. 2016) (affirming grant of summary judgment for insurer where insured's evidence showed that damage could be "*linked*" to a particular hail storm, but did "nothing to enable a jury to segregate damages for only that property damage caused by covered perils that occurred within the policy period"); *Wallis v. United Servs. Auto Ass'n*, 2 S.W.3d 300, 304 (Tex. App.—San Antonio 1999, pet. denied) ("[T]he jury could believe that plumbing leaks caused part of the complained-of damage. However, the engineers could not indicate the extent to which this peril damaged the Wallises' home. This is fatal to their claim.").

Here, as noted, the policy coverage period was June 2, 2012, to June 2, 2013. The summary judgment evidence reveals that several hail storms struck the vicinity of the hotel in the several years preceding Lowen Valley's claim. Only one of these storms fell within the coverage period. The district court held that Lloyd's was entitled to summary judgment because the record lacked reliable evidence permitting a jury to determine which of these storms—alone or in combination—damaged the hotel. We agree.

To resist this conclusion, Lowen Valley relies on two purported sources of proof. The first is a computer log note entered by Derek Phipps, the Lloyd's adjuster, which states: "The roof materials are totaled by hail on reported and documented [Date of Loss]." But, as is suggested by Phipps' full report and confirmed by his later deposition testimony, Phipps did not offer an opinion on

5

*when* the hotel was damaged. His job was to determine *whether* the hotel was damaged by hail, and estimate the cost to repair it. He therefore did not question the date of loss provided by Lowen Valley's agent. Phipps' short note would not help a jury decide when the roof was damaged.

Second, Lowen Valley points to Haag Engineering's second report. That report twice referred to the June 13, 2012 storm as the "most likely" cause of the damage. We agree with the district court that, considered in context, these statements could not meet Lowen Valley's trial burden.

In its initial report, Haag concluded that "the most recent hailstorm with hailstones large enough to cause the damage we observed was on June 13, 2012." This statement was consistent with weather data attached to the report, which showed four storms with an estimated maximum hail size of one inch or greater before June 13, 2012, and none after. In preparing the second report, Haag was "asked to discuss the likelihood that damage occurred between December 29, 2012 and December 29, 2014." The company stated:

> In our [first] report, we reviewed weather information for the area, and we concluded that the observed damage most likely occurred on June 13, 2012. We have been subsequently asked to consider whether damage could have occurred between the dates of December 29, 2012 and December 29, 2014. We note from review of our April 8, 2015 report that we had already considered that time period. We note further that the information contained in Attachment B of that report includes the dates through December 31, 2014, and as can be seen from review of that list, there were no reports of large hail in Irving from December 29, 2012 to December 29, 2014. We considered other sources of information and they helped us confirm June 13, 2012 as the most likely date damage occurred.
>
> . . .
>
> Given the general absence of spatter marks and evidence of recent hailfall, we have no reason to believe the dents occurred more recently than the June 13, 2012 date given.

6

No. 17-10914

Haag's third report reiterated that several storms could have caused the damage to the hotel. Relying on the same data compiled for the first Haag report, it listed four dates on which both radar data and surface reports suggested that hail greater than one inch in diameter fell at the property: March 10, 2010, May 24, 2011, April 3, 2012, and June 13, 2012. Based on this data, Haag "conclude[d] that it is unlikely that hail only fell at this location one time. Rather, there have been multiple hail events at this location."

Finally, in the August 11, 2016 letter, Haag disclaimed any opinion that the hail damage could be ascribed to the June 13, 2012 storm:

> In summary, it was never our intention to suggest that June 13, 2012, was the known date or the only date that dents/damage occurred at this property, and statements made within the April 8, 2015, report and June 30, 2015, report are consistent with our August 4, 2016, report. Meteorological study has been performed that identifies additional dates in which conditions were conducive to hail at the site prior to June 2012. Physical evidence from the site that would allow anyone to determine more precisely what date or dates the dents/damage occurred has long since weathered away.

Lowen Valley does not attempt to explain how the data underlying the Haag reports could support the conclusion that the hotel was damaged on June 13, 2012 and not during the other reported storms. Instead, it focuses on the stray "most likely" language, and alleges that Haag has shifted its opinion to shore up Lloyd's litigation position. But even assuming that Haag genuinely concluded that June 13, 2012 was the most likely date of damage to the hotel, that opinion conflicts with the data it purports to rely on and has since been disclaimed. Given the undisputed evidence of severe hail events outside the coverage period, Lowen Valley's evidence does not "afford[] the jury a reasonable basis on which to allocate the damage." *Lyons*, 866 S.W.2d at 601.

Because Lowen Valley has failed to meet its burden to show what portion, if any, of the claimed damage occurred during the coverage period,

No. 17-10914

Lloyd's is entitled to summary judgment on its claim seeking a declaratory judgment. Lowen Valley's counterclaims for a declaratory judgment and breach of contract fail for the same reason. Finally, as Lowen Valley concedes, its counterclaims under the Texas Insurance Code are based on unpaid coverage benefits rather than some other, independent injury. Accordingly, Lowen Valley's statutory claims fall with its breach of contract claim. *See USAA Tex. Lloyds Co. v. Menchaca*, 14-0721, 2018 WL 1866041, at \*5 (Tex. Apr. 13, 2018) ("[A]n insured cannot recover *any* damages based on an insurer's statutory violation if the insured had no right to receive benefits under the policy and sustained no injury independent of a right to benefits.").

III.

The judgment is AFFIRMED.