# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 30, 2020

Lyle W. Cayce
Clerk

No. 19-20576

LINA SALEK,

Plaintiff–Appellant,

v.

SUNTRUST MORTGAGE, INCORPORATED,

Defendant–Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-1664

Before OWEN, Chief Judge, and HIGGINBOTHAM and WILLETT, Circuit Judges.

PER CURIAM:*

Lina Salek sued SunTrust Mortgage, Inc. for breach of contract and conversion. Salek alleges SunTrust refused to release insurance proceeds in breach of the Deed of Trust and instead retained the funds so it could collect interest on them. The district court granted summary judgment in favor of SunTrust on both claims. We affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-20576

## I

Lina Salek's home flooded in August of 2017 during Hurricane Harvey. When Salek purchased her home, she executed a Deed of Trust with her mortgagee, SunTrust Mortgage, Inc. (SunTrust), encumbering the property. The Deed of Trust required Salek to maintain flood insurance and to use the insurance proceeds to repair the property. It also required Salek to sign insurance proceeds over to SunTrust to hold in a restricted escrow account to ensure the funds were used for home repairs.

After the flood, Salek made a claim with her flood insurer that was ultimately approved for a nearly $130,000 payout. She forwarded the insurance payments to SunTrust, as required by the Deed of Trust. SunTrust released an initial payment of $15,400 to Salek on November 28, 2017. SunTrust inspected the house on March 2, 2018, and the inspection showed that 50% of the necessary repairs were complete. Two weeks later, SunTrust released nearly $57,000 (50% of the remaining insurance proceeds) to Salek. A second inspection was performed on March 19, showing that 92% of the repairs had been completed. Later that day, Salek informed a SunTrust representative of the 92% completion rate. Salek alleges that the representative told her that she would receive final disbursement of her insurance proceeds because her inspection completion rate was above the required 90% threshold. SunTrust's internal account notes also indicate that it was requiring a 90% threshold. The Deed of Trust did not specify a completion threshold at which funds would be released.

Three days later, Salek was told that her house required another inspection before the funds could be released. When Salek called SunTrust to ask why another inspection was needed, she was told that she had an 84% completion rate on the inspector's submitted report. Salek then resubmitted the report showing a 92% completion rate. An additional inspection was

conducted on March 27, showing a 95% completion rate. On March 29, Salek received a call from SunTrust acknowledging a 92% completion rate but claiming that it could not release the remaining insurance funds because there was a missing bathroom door that it considered structural. A fourth inspection, performed on May 16, showed that the repairs were 100% complete.

On May 22, Salek paid $55,000 to bring her mortgage balance down to the amount of the remaining undisbursed insurance proceeds. She claims that SunTrust required her to do this before it would apply the remaining insurance proceeds to her mortgage. SunTrust released the remaining insurance proceeds on May 24, which were then applied to the balance of Salek's mortgage. SunTrust sent Salek a check for $3.47 on June 7, which it claims was the interest accumulated on Salek's restricted escrow account.

Salek filed suit against SunTrust, asserting claims for breach of contract, breach of fiduciary duty, violations of the Deceptive Trade Practices Act (DTPA), and unjust enrichment. The district court dismissed Salek's claims for breach of fiduciary duty, violations of the DTPA, and unjust enrichment. Salek does not appeal the dismissal of those claims. The district court also dismissed in part Salek's breach of contract claim. Salek subsequently filed an amended complaint asserting breach of contract and conversion claims. The district court granted SunTrust's motion for summary judgment on those claims. Salek appealed the summary judgment.

## II

The dispute in this case arises from the timing of the payment of insurance proceeds. Salek alleges that SunTrust impermissibly delayed the release of her funds so that it could collect interest on those funds. She claims the Deed of Trust requires disbursement of insurance proceeds before repairs are completed. She argues that in failing to send her the remainder of the insurance proceeds once she had received an inspection showing over 90%

completion, SunTrust breached the Deed of Trust and converted the insurance proceeds. SunTrust maintains that the Deed of Trust requires only an initial disbursement of funds and disbursement of the rest once the repairs are completed to its satisfaction. Thus, SunTrust argues, it complied with the terms of the Deed of Trust.

We review a summary judgment de novo, applying the same standard as the district court.[1] Because this court is sitting in diversity, the substantive law of the state of Texas applies.[2] "The elements of a breach of contract action under Texas law are: '(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'"[3] SunTrust challenged only the third element on summary judgment.

## A

To determine if SunTrust breached the Deed of Trust, we must ascertain the terms of the Deed of Trust by looking to its plain language.[4] Two sections of the Deed of Trust govern insurance proceeds—Paragraph 5 and Paragraph 7. Paragraph 5 states:

> [A]ny insurance proceeds . . . shall be applied to restoration or repair of the Property . . . . During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the

[1] *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 310 (5th Cir. 2017) (citing *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010)).

[2] *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938).

[3] *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Smith Int'l., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007)).

[4] *See Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 888 (Tex. 2019).

repairs and restoration in a single payment or in a series of progress payments as the work is completed.

Paragraph 7 states:

> If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.

Salek argues that together, these paragraphs mean that "the Lender must release funds (either a lump sum or in a series of payments) to the Borrower to accomplish repairs *before* such repairs will be required to be completed." SunTrust argues that the district court correctly interpreted the Deed of Trust when it determined that SunTrust was required to disburse some, but not all, funds before Salek's duty to repair ripened. The district court determined that the Deed of Trust required SunTrust to release the remaining funds only when it had inspected the property and determined that the work had been completed to its satisfaction.

We agree with the district court's interpretation of the Deed of Trust. Although the provision stating, "Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes," read alone supports Salek's reading of the contract, we cannot analyze that phrase in isolation. We must "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless."[5] Reading the Deed of Trust to require disbursement of all proceeds before work is completed renders meaningless the

---

[5] *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006) (emphasis omitted) (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)).

provisions stating, "Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction," and that the Lender may distribute proceeds "as the work is completed."

We thus agree with the district court that the provision stating, "Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes," means that Salek's duty to repair the property ripened once SunTrust released a portion of the insurance proceeds. The Deed of Trust did not require SunTrust to release all proceeds before the repairs were completed. SunTrust was only required to disburse the remainder of the proceeds following a prompt inspection that showed the work was completed to SunTrust's satisfaction.

**B**

Salek argues that even if the district court's interpretation of the Deed of Trust is correct, SunTrust was not entitled to summary judgment on the breach of contract claim. Salek contends that SunTrust breached the Deed of Trust when it "articulated to her that a 90 percent completion rate would be sufficient and . . . subsequently received two inspection reports in excess of that benchmark," but did not release the remaining insurance proceeds. We interpret this statement as either an argument that SunTrust was satisfied under the terms of the contract at the 90% completion threshold or that SunTrust orally modified the contract so that it was obligated to release the remainder of the funds upon proof of a 90% completion rate.

To the extent that this is an argument that SunTrust "expressed satisfaction with [Salek's] performance" but refused to release the funds, it is forfeited. In its order granting SunTrust's motion for summary judgment, the district court noted that Salek "d[id] not argue[] that the repairs and restoration of her house . . . had 'been completed to [SunTrust's] satisfaction.'"

No. 19-20576

After reviewing Salek's response to SunTrust's motion for summary judgment, we too determine that Salek did not raise the argument in her response. She argued in the response that requiring a 100% completion rate was a breach of the Deed of Trust, not that there was a fact issue as to whether SunTrust was satisfied when she reported a completion rate in excess of 90%. Because Salek did not raise the argument in her response to the motion for summary judgment, it is forfeited.[6]

To the extent that Salek argues on appeal that SunTrust orally modified the Deed of Trust so that Salek was entitled to the remainder of her funds once she received an inspection with a completion rate in excess of 90%, the district court correctly determined that such a modification is barred by the statute of frauds. The statute of frauds requires the Deed of Trust to be in writing,[7] and therefore a "modification of [the Deed of Trust] must [also] be in writing to be valid."[8] Here, the alleged modification was oral, and thus it was invalid. We therefore affirm summary judgment on the breach of contract claim.

## C

Salek also argues that the district court erred in granting summary judgment on her conversion claim. To succeed on a claim for conversion, Salek must prove, among other things, that SunTrust "wrongfully exercised dominion and control over the property, excluding [her]."[9] Salek's argument that SunTrust wrongfully exercised control over the insurance proceeds is

---

[6] *See Stults v. Conoco, Inc.*, 76 F.3d 651, 657 (5th Cir. 1996) ("Although on summary judgment the record is reviewed de novo, this court for obvious reasons, will not consider evidence or arguments that were not presented to the district court for its consideration in ruling on the motion." (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 (5th Cir. 1992))).

[7] TEX. BUS. & COM. CODE ANN. § 26.02(b) (West 2019).

[8] *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5th Cir. 2013).

[9] *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009) (citing *Small v. Small*, 216 S.W.3d 872, 877 (Tex. App.—Beaumont 2007, pet. denied)).

No. 19-20576

entirely premised on her argument that SunTrust held the funds in breach of the Deed of Trust. Because we determine that SunTrust did not breach the Deed of Trust when it refused to disburse the insurance proceeds, its exercise of control over the funds was not wrongful.[10] The district court properly granted summary judgment in favor of SunTrust on the conversion claim.

*      *      *

The judgment of the district court is AFFIRMED.

---

[10] *See Robinson v. Nat'l Autotech, Inc.*, 117 S.W.3d 37, 39-40 (Tex. App.—Dallas 2003, pet. denied) ("There can be no conversion where the owner has expressly or impliedly assented to the taking or disposition." (citing *Lone Star Beer, Inc. v. Republic Nat'l Bank of Dall.*, 508 S.W.2d 686, 687 (Tex. App.—Dallas 1974, no writ))).