**Opinion filed October 16, 2020**



In The

# Eleventh Court of Appeals

_____

## No. 11-18-00241-CV

_____

## PRIME TIME FAMILY ENTERTAINMENT CENTER, INC., Appellant

## V.

## AXIS INSURANCE COMPANY AND ANDREW JENCKS, Appellees

**On Appeal from the 350th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 10662-D**

## O P I N I O N

This appeal concerns a first-party insurance claim. It presents the question of whether an insured that receives a payment from the insurer on its claim is excused from complying with the requirement to segregate covered losses from non-covered losses under the doctrine of concurrent causes if it later brings a suit for breach of contract. We conclude that the insurer's payment of a claim does not excuse the

insured from segregating covered losses from non-covered losses in a subsequent breach of contract action on the insurance policy. We affirm.

*Background Facts*

Appellant, Prime Time Family Entertainment Center, Inc., operates a commercial business in Abilene. Prime Time obtained a commercial insurance policy from Appellee, AXIS Insurance Company. The AXIS policy insured Prime Time's property against hail damage, among other perils, from September 2013 to September 2014. Appellee Andrew Jencks is an adjuster for AXIS.

In June 2014, a major hailstorm hit Abilene. Prime Time filed a claim with AXIS for roof damage that Prime Time alleged it had suffered because of the hailstorm. AXIS subsequently began investigating Prime Time's claim. AXIS did not initially identify significant hail damage to Prime Time's roof. AXIS also learned about possible preexisting, non-covered damage to Prime Time's roof during this initial investigation.

In May 2015, an adjuster for AXIS sent a payment letter to Prime Time. The letter notified Prime Time that AXIS was making a payment for hail damage from the June 2014 hailstorm. The letter estimated that Prime Time had suffered repairable hail damage to its roof in the amount of $245,716.16. AXIS enclosed payment for $173,980.35, representing the amount after AXIS deducted Prime Time's $25,000 deductible and "temporarily subtracted $45,735.81 in recoverable depreciation."[1] The letter stated that the payment was for "the undisputed portion of [Prime Time's] claim at this time." The letter further advised Prime Time that it "may make an additional claim for the replacement cost up to $45,735.81 by sending [AXIS] the repair invoice documenting your final cost." The letter also stated that other roof damage required additional investigation to determine whether the

---

[1]There is a $1,000 discrepancy in the calculation of the amounts in the letter. Because of the discrepancy, AXIS underpaid Prime Time by $1,000.

damage was caused by the June 2014 hailstorm. AXIS expressly reserved all rights under the policy and requested a joint site inspection with the interested parties.

Rather than repairing the hail damage, Prime Time replaced the entire roof for approximately $750,000. Prime Time decided to replace the roof based on the opinion of a roofer, Mark Greenwood, that the hail damage "totaled" the roof. However, Greenwood testified at his deposition that he made no attempt to allocate between hail damage and other causes of damage to Prime Time's roof.

Around the same time that it replaced the roof, Prime Time sued AXIS for wrongfully denying and underpaying Prime Time's claim. Prime Time alleged that AXIS breached the policy by underpaying Prime Time's claim. Prime Time also alleged extracontractual claims under Chapters 541 and 542 of the Texas Insurance Code. Prime Time pleaded for damages of $2,000,000.

During discovery, Prime Time produced an e-mail between Prime Time's agent and Dow Roofing Systems, the company that installed and warranted Prime Time's original roof. The e-mail was sent in May 2014, one month before the June 2014 hailstorm. In that e-mail, Prime Time described its roof as "Swiss cheese" and requested that Dow replace the entire roof under the warranty agreement. The e-mail included a schematic depicting pervasive roof leaks at Prime Time's facility. Through third-party discovery, AXIS obtained other documents that showed an extensive history of roof issues and warranty claims by Prime Time from 2008 through the May 2014 "Swiss cheese" e-mail.

AXIS moved for summary judgment on traditional grounds under the doctrine of concurrent causes. It asserted that Prime Time could not meet its burden to allocate damages between covered and non-covered perils. The trial court granted AXIS's motion for summary judgment.

3

*Analysis*

Prime Time challenges the summary judgment in two issues. We review a trial court's grant of summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). When reviewing a summary judgment, we review the evidence in the light most favorable to the nonmovant, indulge every reasonable inference in favor of the nonmovant, and resolve any doubts against the motion. *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 833 (Tex. 2018) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005)).

A party moving for traditional summary judgment bears the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017). To be entitled to traditional summary judgment, a defendant must conclusively negate at least one essential element of the cause of action being asserted or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). If the movant initially establishes a right to summary judgment on the issues expressly presented in the motion, then the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979).

In its first issue, Prime Time contends that the trial court erred in granting summary judgment on its claim for breach of contract. An insurance policy is a contract that establishes the respective rights and obligations to which an insurer and its insured have mutually agreed. *RSUI Indem. Co. v. Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015). "[A]n insured cannot recover under an insurance policy unless facts are pleaded and proved showing that damages are covered by his policy."

4

*Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 400 (Tex. 2016) (quoting *Emp'rs Cas. Co. v. Block*, 744 S.W.2d 940, 944 (Tex. 1988)).

AXIS sought summary judgment under the doctrine of concurrent causes. Under this doctrine, where covered and non-covered perils combine to create a loss, the insured is entitled to recover only that portion of the damage caused solely by the covered peril. *Travelers Indem. Co. v. McKillip*, 469 S.W.2d 160, 163 (Tex. 1971); *Tex. Windstorm Ins. Ass'n v. Dickinson Indep. Sch. Dist.*, 561 S.W.3d 263, 273 (Tex. App.—Houston [14th Dist.] 2018, pet. denied); *All Saints Catholic Church v. United Nat'l Ins. Co.*, 257 S.W.3d 800, 802 (Tex. App.—Dallas 2008, no pet.); *Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300, 302–03 (Tex. App.— San Antonio 1999, pet. denied); *see Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018) (addressing Texas law).[2]  The doctrine of concurrent causes is not an affirmative defense or an avoidance issue; rather, it is a rule embodying the basic principle that insureds are not entitled to recover under their insurance policies unless they prove their damage is covered by the policy. *Dickinson Indep. Sch. Dist.*, 561 S.W.3d at 273; *All Saints Catholic Church*, 257 S.W.3d at 802; *Wallis*, 2 S.W.3d at 303.  The burden is on the insured to prove coverage. *Dickinson Indep. Sch. Dist.*, 561 S.W.3d at 273; *All Saints Catholic Church*, 257 S.W.3d at 803; *Wallis*, 2 S.W.3d at 303.  Thus, when an insurer demonstrates that a non-covered peril could have caused the insured's loss, the burden shifts to the insured to produce evidence to allow the trier of fact to segregate covered losses from non-covered losses. *Dickinson Indep. Sch. Dist.*, 561 S.W.3d at 273.  The "[f]ailure to segregate covered and non-covered perils is fatal to recovery." *Id.*

---

[2]The Texas doctrine of concurrent causes has frequently been litigated in federal courts.

As noted previously, the AXIS policy provided coverage for perils occurring during a one-year period. In its petition, Prime Time alleged that its loss was the result of a covered peril occurring during the AXIS policy period. Prime Time alleged that AXIS committed a breach of contract by underpaying Prime Time's claim because the loss of its roof was attributable to the hailstorm.

AXIS invoked the doctrine of concurrent causes in its motion for summary judgment by detailing the evidence showing that Prime Time had had problems with the roof for several years prior to the 2014 hailstorm. *See id.*; *see also Atwill v. State Farm Lloyds*, No. CIV.A. 304CV1343-K, 2006 WL 1118155, at *2 (N.D. Tex. Apr. 27, 2006) (An insurer can invoke the Texas doctrine of concurrent causes by providing competent summary judgment evidence that a non-covered source could also have caused the claimed damage thereby placing on the insured the burden of establishing evidence to allow the jury to segregate covered losses from non-covered losses.); *Certain Underwriters at Lloyd's of London v. Lowen Valley View, LLC*, No. 3:16-CV-0465-B, 2017 WL 3115142, at *11 (N.D. Tex. July 21, 2017), *aff'd*, 892 F.3d 167 (5th Cir. 2018). AXIS asserted that Prime Time had no evidence allocating its damages between covered perils and non-covered perils.

Prime Time initially responded on the merits to AXIS's motion for summary judgment by asserting that it had evidence upon which the jury could allocate damages between covered and non-covered perils. After the trial court granted AXIS's motion for summary judgment, Prime Time filed a motion for reconsideration wherein it requested the trial court to consider new evidence in the form of a deposition transcript of AXIS's representative. Prime Time asserted that the deposition raised fact questions on its claim for breach of contract and its extracontractual claims. Prime Time specifically asserted that AXIS's representative had admitted that AXIS had failed to pay the $45,735.81 in recoverable depreciation after Prime Time had replaced the roof. The trial court

subsequently entered an order accepting Prime Time's new evidence as a part of the summary judgment evidence in the case. However, the trial court denied Prime Time's motion for reconsideration.

Prime Time does not assert on appeal that it has evidence allocating its claimed losses between covered and non-covered perils. Instead, Prime Time contends that the doctrine of concurrent causes is inapplicable in this case because the 2015 letter from AXIS established that a portion of Prime Time's claim was undisputed. Prime Time asserts that AXIS cannot deny coverage for the undisputed covered damages under the terms of AXIS's payment letter. Prime Time contends that AXIS's $1,000 underpayment in May 2015 and its failure to release the withheld depreciation upon receiving the roof-replacement invoice created fact issues regarding Prime Time's breach of contract claim.

Prime Time is essentially asserting that AXIS has either waived or is estopped from invoking the doctrine of concurrent causes because it characterized a portion of Prime Time's claim as undisputed in its 2015 payment letter. The federal district court in *Atwill* addressed a similar contention. 2006 WL 1118155, at *2. The insured in *Atwill* asserted that the insurer was estopped from relying on the doctrine of concurrent causes because its records showed that the insured's loss was caused by a covered peril. *Id.* Applying Texas law, the court rejected the insured's argument. *Id.* The court cited *Texas Farmers Insurance Co. v. McGuire* for the proposition that "estoppel cannot be used to create insurance coverage when none exists by the terms of the policy." *Id.* (quoting *Tex. Farmers Ins. Co. v. McGuire*, 744 S.W.2d 601, 602–03 (Tex. 1988)). "Courts have repeatedly refused to apply the doctrines of estoppel and waiver to 'change, re-write and enlarge the risks covered by a policy.'" *Id.* (quoting *McGuire*, 744 S.W.2d at 603). The court in *Atwill* concluded that, even if the insurer's records could establish that a covered peril

potentially caused the loss, the insured must still provide summary judgment evidence to allow the jury to segregate covered losses from non-covered losses. *Id.*

Prime Time contends that *Atwill* is distinguishable because the subsequent suit only concerned the disputed portion of the insured's claim. Prime Time focuses on this sentence from the opinion in *Atwill*: "Defendant argues there is no evidence that Plaintiff suffered damage by a covered loss which has not already been paid." *Id.* at *1. We disagree that this statement makes *Atwill* distinguishable from this case because Prime Time's suit for breach of contract also seeks to recover for a covered loss that has not already been paid by AXIS. In this regard, AXIS did not seek to recover the $173,980.35 that it paid to Prime Time.

We agree with the reasoning in *Atwill* on the same authority upon which it relied. The contractual coverage of an insurance policy cannot be expanded by waiver or estoppel on the part of the insurer. *McGuire*, 744 S.W.2d at 602–03; *Washington Nat'l Ins. Co. v. Craddock*, 109 S.W.2d 165, 165–66 (Tex. 1937); *see Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778–80 (Tex. 2008) (discussing *McGuire* and *Craddock*).

*Craddock*, another first-party insurance case, is particularly instructive. The insured in *Craddock* was entitled to weekly indemnity payments if he became incapacitated from an accidental injury. 109 S.W.2d at 165. The policy specifically excepted gunshot wound injuries from coverage. *Id.* The insured accidentally shot himself with a pistol; he submitted a claim, and the insurer started paying weekly benefits. *Id.* at 165–66. After making eleven payments, the insurer stopped paying benefits. *Id.* at 166. The insured sued, claiming that he told the company's agent and filed his claim showing that he was injured by a gunshot, yet the insurer paid weekly benefits. *Id.* at 165–66. The Texas Supreme Court rejected the insured's attempt to create contractual liability under the policy by waiver because of the insurer's payment of benefits. *Id.* at 166.

8

*McGuire* involved an attempt to enlarge the coverage under a liability policy by estoppel. 744 S.W.2d at 602–03. The Texas Supreme Court in *McGuire* cited *Craddock* for the proposition that "[t]he doctrine of estoppel cannot be used to create insurance coverage when none exists by the terms of the policy." *Id.* The court stated: "Waiver and estoppel . . . have consistently been denied operative force to change, re-write and enlarge the risks covered by a policy. In other words, waiver and estoppel cannot create a new and different contract with respect to risks covered by the policy." *Id.* at 603 (quoting *Great Am. Reserve Ins. Co. v. Mitchell*, 335 S.W.2d 707, 708 (Tex. App.—San Antonio 1960, writ ref'd)).

Under the holdings in *McGuire* and *Craddock*, AXIS's payment of a portion of Prime Time's claim for hail damage, as well as AXIS's characterization of a portion of Prime Time's claim as "undisputed," cannot expand the coverage originally afforded by the insurance policy. As was the case with the insurer in *Craddock*, AXIS was entitled to insist upon a showing from Prime Time in Prime Time's breach of contract action that its claimed losses were attributable to a peril covered by the policy, irrespective of the fact that AXIS had previously paid a portion of Prime Time's claim. Thus, we conclude that AXIS was not precluded from invoking the doctrine of concurrent causes; to hold otherwise would be permitting Prime Time to expand the coverage provided by the policy by waiver or estoppel on the part of AXIS.

Prime Time contends that AXIS's payment letter, coupled with the evidence that AXIS deducted too much for the deductible ($1,000 too much) and that AXIS has not paid the withheld depreciation ($45,735.81) after repairs were made, raises a fact question on Prime Time's claim for breach of contract. We disagree. Prime Time's claim for breach of contract is governed by the terms of the insurance policy, not AXIS's actions in adjusting a claim made under the policy. *See McGuire*, 744 S.W.2d at 602–03; *Craddock*, 109 S.W.2d at 165–66. We have determined that

AXIS properly invoked the doctrine of concurrent causes in its motion for summary judgment. Furthermore, AXIS's summary judgment evidence established that Prime Time has no evidence attempting to segregate losses attributable to covered perils from losses attributable to non-covered perils. *See Dickinson Indep. Sch. Dist.*, 561 S.W.3d at 280–81 (noting that expert testimony on causation may be required by the facts in order to satisfy the doctrine of concurrent causes). Thus, the trial court did not err in granting AXIS's motion for summary judgment on Prime Time's breach of contract claim. We overrule Prime Time's first issue.

In its second issue, Prime Time asserts that the trial court erred by granting summary judgment on Prime Time's extracontractual claims. "An insured's claim for breach of an insurance contract is 'distinct' and 'independent' from claims that the insurer violated its extra-contractual common-law and statutory duties." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489 (Tex. 2018). "[T]he Insurance Code supplements the parties' contractual rights and obligations by imposing procedural requirements that govern the manner in which insurers review and resolve an insured's claim for policy benefits." *Id.* at 488. "The general rule is that an insured cannot recover policy benefits for an insurer's statutory violation if the insured does not have a right to those benefits under the policy." *Id.* at 490.

Prime Time initially premises its argument on the contention that the trial court erred in granting summary judgment on Prime Time's claim for breach of contract. By overruling Prime Time's first issue, we have determined that the trial court did not err in granting summary judgment on the claim for breach of contract.

Prime Time additionally contends that its claim under Section 541.060 of the Texas Insurance Code survives irrespective of the disposition of its claim for breach of contract. *See* TEX. INS. CODE ANN. § 541.060 (West 2009). This provision of the Insurance Code prohibits insurers from engaging in enumerated "unfair settlement practices with respect to a claim" by an insured under an insurance policy. *Id.*

10

§ 541.060(a); *see Davis v. Nat'l Lloyds Ins. Co.*, 484 S.W.3d 459, 473 (Tex. App.— Houston [1st Dist.] 2015, pet. denied). Prime Time contends that, under the Texas Supreme Court's decision in *Menchaca*, an insured is not required to prove that the insurer breached the policy or that the insured suffered an independent injury in order to recover on an extracontractual claim. We disagree with Prime Time's reading of *Menchaca*.

In *Menchaca*, the court announced "five distinct but interrelated rules that govern the relationship between contractual and extra-contractual claims in the insurance context." *Id.* at 489. The court stated the rules as follows:

> First, as a general rule, an insured cannot recover policy benefits as damages for an insurer's statutory violation if the policy does not provide the insured a right to receive those benefits. Second, an insured who establishes a right to receive benefits under the insurance policy can recover those benefits as actual damages under the Insurance Code if the insurer's statutory violation causes the loss of the benefits. Third, even if the insured cannot establish a present contractual right to policy benefits, the insured can recover benefits as actual damages under the Insurance Code if the insurer's statutory violation caused the insured to lose that contractual right. Fourth, if an insurer's statutory violation causes an injury independent of the loss of policy benefits, the insured may recover damages for that injury even if the policy does not grant the insured a right to benefits. And fifth, an insured cannot recover *any* damages based on an insurer's statutory violation if the insured had no right to receive benefits under the policy and sustained no injury independent of a right to benefits.

*Id.*

Prime Time contends that "what the insured must demonstrate is coverage, not a breach of contract." Prime Time contends that it is undisputed that its claim under the policy was covered based upon the payment letter from AXIS. But as we have previously discussed, there can only be coverage if the terms of the policy provide coverage. The manner in which AXIS adjusted the claim cannot create coverage by either waiver or estoppel. *See McGuire*, 744 S.W.2d at 602–03;

*Craddock*, 109 S.W.2d at 165–66. "An insured cannot recover *any* damages based on an insurer's statutory violation unless the insured establishes a right to receive benefits under the policy or an injury independent of a right to benefits." *Menchaca*, 545 S.W.3d at 500. Because Prime Time cannot show a right to receive benefits under the policy and because it has not alleged or shown an independent injury, Prime Time cannot recover on its extracontractual claims. *See id.*; *see also Lowen Valley*, 892 F.3d at 172 (applying *Menchaca*). We overrule Prime Time's second issue.

<em>This Court's Ruling</em>

We affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


October 16, 2020

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[3]

Willson, J., not participating.

---

[3]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.