# United States Court of Appeals
# for the Fifth Circuit

No. 22-50432
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
January 27, 2023

Lyle W. Cayce
Clerk

FINGER OIL & GAS, INCORPORATED,

*Plaintiff—Appellant*,

*versus*

MID-CONTINENT CASUALTY COMPANY,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:20-CV-712

Before STEWART, DUNCAN, and WILSON, *Circuit Judges*.

PER CURIAM:*

   This appeal arises out of an insurance coverage dispute between Finger Oil & Gas, Inc. ("Finger Oil"), the insured, and Mid-Continent Casualty Company ("Mid-Continent"), the insurance provider. The magistrate judge granted Mid-Continent's motion for summary judgment, and Finger Oil appeals the magistrate judge's dismissal of its

---

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 22-50432

misrepresentation and breach of contract claims. For the following reasons, we AFFIRM.

## I. Facts & Procedural History

Finger Oil is an insured under a policy issued by Mid-Continent, which provides general liability insurance. On July 19, 2019, Finger Oil was drilling at its own natural gas well, named Drushel #1, located in Jackson County, Texas when a valve failed and the well blew out. In response, Finger Oil contacted Desiree Scrimger, the commercial-lines account manager at Marsh USA, Inc. ("Marsh"), Finger Oil's insurance agent, to inquire whether it was covered for the blow out. Because Scrimger was unfamiliar with the policy, she reached out to an underwriter at Mid-Continent requesting that it "confirm that this insured has **Blow Out and Cratering coverage** and advise the **limit**." Mid-Continent's underwriter replied in an email stating:

> The policy ML1419 Oil & Gas Endorsement IV Blow-Out and Cratering has a box to X if the coverage is excluded. The ML1419 for this policy is not X'd. The limit for Blow Out and Cratering is included within the CG0001 Commercial General Liability Form, Section III Limits of Insurance.

Based on this response, Scrimger emailed Finger Oil as follows:

> Per the underwriter regarding coverage, the Blowout and Cratering are included within the limit of insurance. Limits are $1M occurrence/$2M aggregate. Please note that each claim is based on its own merit and this is just verifying the coverage in place.

Thereafter, a claims specialist at Mid-Continent informed Finger Oil that it would be reviewing the policy regarding coverage for the incident. Nevertheless, before the claim was approved, Finger Oil, relying on Scrimger's email as confirmation that it was covered for the incident, hired

several contractors to work on the well and incurred bills for these services in the amount of $641,590.90.

Mid-Continent subsequently denied Finger Oil's insurance claim, which was for expenses incurred while repairing property from the well blow out and the costs to bring the well under control. Mid-Continent determined that there was no coverage under the policy for these damages based on two exclusions. First, Mid-Continent stated that the policy included an exclusion entitled "Damage to Property" in Section 1.2.j(1) ("Ownership Exclusion") which excluded from coverage "property damage" to:

> Property you own, rent, or occupy, including any costs or expenses by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property.

According to Mid-Continent, this exclusion "preclude[d] coverage of costs and expenses associated with the repair or replacement of a well structure that Finger Oil owns." Second, it stated that the policy included endorsement ML1419 ("Oil & Gas Endorsement") which excluded from coverage:

> Any loss, cost or expense incurred by you or at your request or by or at the request of any "Co-owner of the Working Interest" in connection with controlling or bringing under control any oil, gas, or water well.

According to Mid-Continent, this endorsement "preclude[d] coverage for the costs and expenses submitted for controlling and bringing the well under control."

No. 22-50432

Finger Oil filed suit against Mid-Continent in state court asserting several causes of action.[1] These claims included: (1) misrepresentation claims for violations of § 541.051 of the Texas Insurance Code and the Texas Deceptive Trade Practices Act ("DTPA");[2] (2) breach of contract claims; and (3) a claim that Mid-Continent failed to timely investigate the claim in violation of § 542.055 and § 542.056 of the Texas Insurance Code. The suit was removed to federal court and thereafter the parties consented to proceed before a magistrate judge who subsequently held a pretrial conference. After the conference, the magistrate judge directed Finger Oil to amend its state court petition to "clarify its factual allegations and conform with federal pleading requirements." Finger Oil did not file an amended complaint as directed.

Mid-Continent then filed a motion for summary judgment, which the magistrate judge granted in part. It dismissed all of Finger Oil's claims, except the breach of contract claim to the extent it involved Mid-Continent's failure to pay costs and expenses for repair of the well. Both Mid-Continent and Finger Oil filed motions for reconsideration. After conducting a hearing and allowing the parties to file supplemental briefing, the magistrate judge granted Mid-Continent's motion for reconsideration and denied Finger Oil's motion for reconsideration. In doing so, it reversed its decision to deny summary judgment on the remaining breach of contract claim for repairing the well. It held that after further review of the policy and hearing the parties' arguments, it was clear that Finger Oil was not entitled to recover costs and

---

[1] Finger Oil also brought suit against Marsh and the underwriter at Marsh for misrepresentation. The underwriter at Marsh was dismissed as improperly joined and Marsh is not a party to this appeal.

[2] The DTPA claim for "false, misleading, or deceptive acts" arises under § 17.46(b) of the Texas Business and Commerce Code. TEX. BUS. & COM. CODE § 17.46(b).

expenses for repairing the well because it owned the well in question, and the policy only provided third-party liability coverage, not first-party liability coverage. Finger Oil then appealed the magistrate judge's dismissal of its misrepresentation and breach of contract claims.

## II. Standard of Review

"In this diversity case, we review the district court's grant of summary judgment de novo, applying Texas law." *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "All reasonable inferences must be viewed in the light most favorable to the party opposing summary judgment, and any doubt must be resolved in favor of the non-moving party." *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017) (citations omitted).

## III. Discussion

We turn first to the magistrate judge's dismissal of Finger Oil's misrepresentation claims, which arise under the DTPA and the Insurance Code. Finger Oil argues that Mid-Continent negligently misrepresented that its policy provided coverage for blowout and cratering when it knew, but did not disclose, that there were exclusions that applied to the coverage. "The general rule is that in the absence of an affirmative misrepresentation, a mistaken belief about the scope of coverage is not actionable under the DTPA or the Insurance Code." *Manion v. Sec. Nat. Ins. Co.*, 2002 WL 34230861, at *2 (Tex. App. Aug 15, 2002, no pet.) (citing *Sledge v. Mullin*, 927 S.W.2d 89, 94 (Tex. App.—Fort Worth 1996, no writ)). However, when "an insurer or agent does more than represent that a policy provides full coverage—such as representing that coverage exists in a specific situation—the insurer or agent

may be liable for a misrepresentation under the DTPA." *Wyly v. Integrity Ins. Sols.*, 502 S.W.3d 901, 908 (Tex. App. 2016, no pet.) (upholding misrepresentation claim where insurer told insured that policy provided coverage from "loading to unloading" and that the insured would be covered under several scenarios posed by the insured).

We agree with the magistrate judge's conclusion that Mid-Continent's statement does not amount to an actionable misrepresentation under the circumstances presented here.[3] Finger Oil's agent asked Mid-Continent whether it had blow out and cratering coverage, to which Mid-Continent correctly replied that it did. Mid-Continent's statement was more akin to a general statement that the policy included such coverage, rather than it was to a misrepresentation of specific policy terms. Indeed, Finger Oil was warned in the same email to "[p]lease note that each claim is based on its own merit and" that the statement was "just verifying the coverage in place." Hence, Finger Oil was not "led wrongly to believe that [its] policy provided protection against a particular risk that was in fact excluded from the policy's coverage." *May v. United Servs. Ass'n of Am.*, 844 S.W.3d 666, 669-70 (Tex. 1992). The summary judgment evidence therefore does not support Finger Oil's misrepresentation claims.

Finger Oil also challenges the dismissal of its breach of contract claims, arguing that the policy covered costs and expenses incurred for (1) repairing property from the well blow out and (2) the costs to bring the well under control. We disagree.

---

[3] The magistrate judge also dismissed the misrepresentation claims based on Finger Oil's failure to amend its complaint to plead the "fraud-type allegations" with sufficient particularity to comply with the heightened pleading standard of Federal Rules of Civil Procedure 9(b) as directed. *See* Fed. R. Civ. P. 16(f) and 14(b).

"In Texas, insurance policies are contracts subject to the rules of contract construction." *Certain Underwriters at Lloyd's of London*, 892 F.3d at 170 (citing *Mid–Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000)). As with other contracts, courts "interpret and enforce them according to settled rules of construction" and "must give the policy's words their plain meaning, without inserting additional provisions into the contract." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008). Accordingly, courts must begin their analysis with the terms of the policy because they "presume parties intend what the words of their contract say." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). The words of the policy "are given their ordinary and generally-accepted meaning unless the policy shows the words were meant in a technical or different sense." *Id*.

The insured has the burden of establishing coverage under the policy. *Id*. at 124. If the insured establishes coverage, the burden shifts to the insurer to then prove the loss is within an exclusion. *Id*. If the insurer establishes that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim within coverage. *Id*. Applying this standard, we hold that the magistrate judge did not err in dismissing Finger Oil's breach of contract claims.

Recovering costs and expenses for the repair of Finger Oil's well is expressly excluded from the policy. As noted, the policy contains an Ownership Exclusion preventing coverage of "property damage" to "property [Finger Oil] own[s] . . . including any costs or expenses incurred by [it] . . . for repair, replacement, enhancement, restoration, or maintenance of such property for any reason." As recognized by the magistrate judge, this exclusion underscores that the policy only provides third-party liability coverage—i.e., coverage for property not owned or controlled by Finger Oil. *See Eagle Water, L.L.C. v. Ash*, 778 F. App'x 304, 305 n.1 (5th Cir. 2019) (per

curiam) ("The purpose of owned property exclusions in general liability policies is to effectuate the intent that liability insurance is designed to provide compensation for damages to property not owned or controlled by the insured. It does not provide first party coverage for losses sustained by the insured on its own property." (quotation omitted)). Finger Oil provides no basis for the court to question the clear terms of this exclusion, nor does it dispute that it owned the well in question.

Rather, Finger Oil argues that this case is akin to *Mid-Continent Casualty Company v. Bay Rock Operating Company*, 14 F.3d 105 (5th Cir. 2010), a case in which this court rejected the insurer's argument that an oil and gas endorsement with identical language precluded coverage for repair costs. *Bay Rock*, however, is readily distinguishable. That case, unlike this one, involved damages to a well that the insured did not own. Whereas here Finger Oil is seeking reimbursement for damages to its own property. Accordingly, *Bay Rock* is not applicable here, and Finger Oil's repair costs are not covered by the policy.

Likewise, Finger Oil's costs for bringing the well under control are not covered. Recall that the Oil and Gas Endorsement includes coverage for "the Blow Out and Cratering of any well" with the exclusion of "[a]ny loss, costs, or expense . . . in connection with controlling or bringing under control any oil, gas, or water well." This provision unambiguously excludes coverage of expenses connected to controlling or bringing under control Finger Oil's well. *See Tristar Expl., Inc. v. Mid-Continent Cas. Co.*, 2007 WL 1816894, at *2 (Tex. App. June 26, 2007) (holding no breach of contract under similar policy language stating that coverage was "limited by the well control exclusion clause, meaning those expenses connected to controlling or bringing under control any gas, oil, or water well are excluded."). Finger Oil again provides no basis for this court to interpret this exclusion in its favor.

No. 22-50432

The magistrate judge, therefore, did not err in holding that Finger Oil's expenses for bringing the well under control were not covered by the policy.

## IV. Conclusion

For the aforementioned reasons, we AFFIRM.