United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 22, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 06-20422
_____

SMITH INTERNATIONAL, INC.,

Plaintiff - Appellant,

versus

THE EGLE GROUP LLC; DON M. EGLE;
DANIEL REES, as Trustee of the Egle
Trust for Michelle A. Egle, the
Egle Trust for John M. Egle Jr.,
and the Egle Trust for Lauren E. Egle,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

Before JONES, Chief Judge, and JOLLY and STEWART, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This dispute arises from a sales-purchase agreement under which the purchaser, Smith International, Inc. ("Smith"), seeks indemnity from the defendant sellers for damages caused by allegedly false representations and warranties in the agreement. Smith appeals the district court's grant of summary judgment in favor of the defendants on all its claims. Although we conclude that Smith's breach of contract and negligent misrepresentation claims are time-barred, we hold that Smith's indemnity claim is not barred by res judicata or the statute of limitations under Texas

law.  We therefore AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

## I.

In April 1997, co-defendant the Egle Group, L.L.C. ("Egle Group")[1] and Tri-State Technologies, L.L.C. ("Tri-State")[2] sold their respective 50% interests in Tri-Tech Fishing Services, L.L.C. ("Tri-Tech") to Smith pursuant to a sales-purchase agreement ("Agreement").  The Agreement listed the Egle Group and Tri-State as the sole sellers ("Sellers") and Smith as the sole purchaser. In the Agreement, Sellers made numerous representations and warranties, and under the Agreement's indemnity clause, Sellers agreed to reimburse Smith for damages arising from any false representations and warranties.  The Agreement was signed, on behalf of the Sellers, by representatives of the Egle Group,[3] by member-managers of Tri-State,[4] and by the general manager of Tri-Tech, Ray Daugherty.  In April 1997 and January 1998, pursuant to

---

[1] The Egle Group is comprised of the Egle Trust for Michelle A. Egle, the Egle Trust for John M. Egle, and the Egle Trust for Lauren E. Egle (collectively, the "Egle Trusts").  Two individuals, Glenn Dauterive and Ray Daugherty, also claimed partial ownership of the Egle Group at the time of the sale.

[2] At the time of the sale, Tri-State was a limited liability corporation composed of several member-managers, including Ray Daugherty.

[3] The representatives of the Egle Group signing the Agreement were Glenn Dauterive, Ray Daugherty, and Don M. Egle, who signed as manager of the Egle Group and as trustee for the Egle Trusts.

[4] The member-managers of Tri-State signing the Agreement were Ray Daugherty and several other individuals.

the Agreement, Smith paid approximately $21 million to the Egle Trusts, Glenn Dauterive, Daugherty, and other individuals.

On March 13, 2000, Smith's felicity took a turn when Rose Dove Egle, the ex-wife of John M. Egle, added Smith as a defendant in an ongoing Louisiana state court suit against her ex-husband. Rose Egle alleged, inter alia, that in 1994, although the Egle Trusts owned 100% of the Egle Group, her ex-husband and others in Tri-Tech conspired and wrongfully conveyed a 12% interest in the Egle Group to Dauterive and a 25% interest in the Egle Group to Daugherty. According to Rose Egle, Smith was liable, as successor to Tri-Tech, for the 1994 wrongful conveyances. When Smith purchased Tri-Tech, it wrongfully disbursed a total of $3,468,919 to Dauterive and Daugherty for their 12% interest and 25% interest, respectively, in the Egle Group, which Smith should have distributed to the Egle Trusts. The question went to a Louisiana jury, and it agreed. It found that Tri-Tech committed fraud and misappropriated the $3,468,919 to Dauterive and Daugherty and that Smith was the successor to Tri-Tech and was not a good-faith purchaser of Tri-Tech. On June 1, 2004, the Louisiana court entered judgment against Smith in the full amount of $3,468,919 plus interest and costs. Smith appealed the judgment to the Louisiana appellate court, where, as far as the record shows, it is now pending.

On October 27, 2004, Smith filed this suit in federal district court in Texas seeking compensation and indemnification for the Louisiana judgment. Smith alleged breach of contract, breach of

3

indemnity, and negligent misrepresentation against the Egle Group, Daniel Rees as trustee of the Egle Trusts (collectively, "Defendants"), the Egle Trusts,[5] and Don M. Egle.[6]  The parties moved for summary judgment, and on January 27, 2006, the district court granted summary judgment in favor of Defendants and Don M. Egle on the basis of res judicata because Smith failed to raise its claims in the form of a reconventional demand in the Louisiana suit.  The district court concluded that all of Smith's claims existed at the time Smith became a defendant in the Louisiana suit and that all of those existing claims arose out of the "same transaction or occurrence" that was the subject matter of the Louisiana suit.  Accordingly, the district court held that Louisiana's res judicata statute, La. Rev. Stat. Ann. § 13:4231 (West 2006), and reconventional demand rule, La. Code Civ. Proc.

---

[5]  Although Smith originally listed the Egle Trusts as defendants, the district court, in its June 3, 2005 memorandum, dismissed them as improper parties.  In that memorandum, the district court also held that the Egle Trusts are bound by the Agreement and that Daniel Rees is therefore a proper defendant as the current trustee of the Egle Trusts.  On appeal, the parties dispute whether the Egle Trusts are bound by the Agreement, and thus, whether Smith may assert its claims against Daniel Rees in his capacity as trustee.

[6] On appeal, Smith does not seek relief against Don M. Egle. In the "Certificate of Interested Parties" in its brief, Smith does not list Don M. Egle as a party to the appeal, and throughout its brief Smith only argues for relief against the Egle Group and the Egle Trusts, through their trustee Daniel Rees.  Accordingly, Don M. Egle advised this Court by letter dated September 14, 2006 that he would not be filing an appellee's brief.

4

Ann. art. 1061 (West 2005), barred Smith's claims for failure to raise them in the Louisiana suit.

On March 29, 2006, the district court vacated the portion of its January 27 order ruling in favor of the Egle Group on the basis of res judicata, apparently because the Egle Group was not a party to the Louisiana suit. Nevertheless, the district court affirmed its grant of summary judgment in favor of the Egle Group, holding that Smith's claims against the Egle Group were time-barred by the statute of limitations because Smith's claims accrued when Smith became a defendant in the Louisiana suit. Smith filed this appeal.

## II.

We review de novo the district court's grant of summary judgment, applying the same standard as the district court. Gowesky v. Singing River Hosp. Sys., 321 F.3d 503, 507 (5th Cir. 2003). Summary judgment is appropriate when "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The issue before us is whether Smith's causes of action accrued on March 13, 2000, when Smith was named as a defendant in the Louisiana suit, or on June 1, 2004, after the Louisiana court entered final judgment against Smith. The accrual date is dispositive in this case for two reasons.

First, the accrual date of its causes of action determines whether Smith was required, by principles of res judicata, to assert its claims in a reconventional demand in the Louisiana suit.

5

Under Louisiana res judicata law,[7] a final judgment in favor of a plaintiff extinguishes "all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation." La. Rev. Stat. Ann. § 13:4231(1); see La. Code Civ. Proc. Ann. art. 1061 (reconventional demand rule).[8] Thus, if Smith had a cause of action that arose out of the same transaction, and that had accrued at the time Smith became a defendant in the Louisiana suit, then Smith's failure to assert such claims barred them under res judicata principles. On the other hand, if Smith's causes of action did not accrue until after the Louisiana court entered final judgment against it, then Smith's causes of action did not exist "at the time of final judgment," see La. Rev. Stat. Ann. § 13:4231(1), and Smith could not have raised its causes of action in a reconventional demand, see La. Code Civ. Proc. Ann. art. 1061.

Second, and apart from res judicata considerations, the accrual date is dispositive because it determines when the statute

---

[7] The parties agree that Louisiana law governs the question of res judicata. See Jones v. Sheehan, Young & Culp, P.C., 82 F.3d 1334, 1338 (5th Cir. 1996) ("When a federal court is asked to give res judicata effect to a state court judgment, the federal court must determine the preclusiveness of that state court judgment under the res judicata principles of the state from which the judgment originates.").

[8] Under Louisiana Code of Civil Procedure article 1061, a defendant must assert, in a reconventional demand, "all causes of action that he may have against the plaintiff that arise out of the transaction or occurrence that is the subject matter of the principal action." Id.

of limitations began to run on Smith's causes of action, and consequently, whether the statute of limitations expired. Under Texas law, indemnity and breach of contract claims are subject to a four-year statute of limitations, Ingersoll-Rand Co. v. Valero Energy Corp., 997 S.W.2d 203, 206, 210-11 (Tex. 1999) (citing Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(3) (Vernon 2002));[9] negligent misrepresentation claims are subject to a two-year statute of limitations, Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon 2002); Coleman v. Rotana, Inc., 778 S.W.2d 867, 873 (Tex. App. 1989).[10] If Smith's indemnity and breach of contract claims accrued at the time Smith became a defendant in the Louisiana suit on March 13, 2000, the four-year statute of limitations expired before Smith filed this suit in federal district court on October 27, 2004.[11] If, however, Smith's claims

---

[9] The Agreement contains an express choice-of-law clause stating that the Agreement shall be governed by and construed in accordance with Texas law, and the parties agree that Texas law governs the Agreement. Therefore, we apply Texas law to Smith's indemnity and breach of contract claims.

[10] Smith argues its negligent misrepresentation claim under Texas law, and Defendants do not argue otherwise because they conclude that the result is the same under Texas and Louisiana law. Therefore, we apply Texas law to Smith's negligent misrepresentation claim.

[11] In its January 27, 2006 memorandum and order, the district court dismissed all claims, including Smith's negligent misrepresentation claim, against all defendants. However, when the district court modified its January 27, 2006 memorandum and order by issuing its March 29, 2006 memorandum and order, the district court did not specifically address whether Smith's negligent misrepresentation claim against the Egle Group was barred by the statute of limitations. Nor is it clear whether Smith still

7

did not accrue until after the Louisiana court entered final judgment against it on June 1, 2004, then Smith's claims are not barred by the statute of limitations.

The parties dispute when Smith's causes of action accrued, and accordingly, whether res judicata and the statute of limitations bar Smith's claims.

III.

A.

In determining the accrual date of Smith's claims, we first turn to consider the rationale of the district court in concluding that all of Smith's claims accrued when Smith became a defendant in the Louisiana suit. In its January 27, 2006 memorandum and order, the district court focused its attention on Section 4.3 of the Agreement, in which the Sellers represented that Smith would acquire Tri-Tech "free and clear of any Liens." Because the Agreement defines "Lien" to include "any ... claim",[12] the district court apparently inferred that this representation in Section 4.3 of the Agreement was breached at the moment Rose Egle asserted a

---

asserts a negligent misrepresentation claim against the Egle Group. Nevertheless, it is clear that Smith asserts the claim against Daniel Rees as trustee. Thus, for the purposes of deciding this appeal, we assume that Smith also continues to assert a negligent misrepresentation claim against the Egle Group.

[12] The Agreement defines "Lien" as "any lien, pledge, mortgage, deed of trust, security interest, <u>claim</u>, lease, charge, option, right of first refusal, easement or other real estate declaration, covenant, condition, restriction or servitude, transfer restriction under any shareholder or similar Contract, encumbrance or any other restriction or limitation whatsoever" (emphasis added).

8

legal claim against Smith in the Louisiana suit.  Accordingly, the district court held that it was at this moment that all of Smith's causes of action -- breach of contract, negligent misrepresentation, and indemnity -- accrued.

B.

We now turn to consider whether the district court erred in each of its holdings, respectively.  We begin with Smith's breach of contract claim.  In Texas, "[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C., 51 S.W.3d 345, 351 (Tex. App. 2001).  The accrual of a breach of contract claim is governed by the legal injury rule. See Boulle v. Boulle, 160 S.W.3d 167, 174 (Tex. App. 2005).  Under the legal injury rule, "a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." S.V. v. R.V., 933 S.W.2d 1, 4 (Tex. 1996).  "Legal injury" is defined as "an injury giving cause of action by reason of its being an invasion of a plaintiff's right." Murphy v. Campbell, 964 S.W.2d 265, 270 (Tex. 1997) (quoting Houston Waterworks Co. v. Kennedy, 8 S.W. 36, 37 (Tex. 1888)).  Accordingly, "[c]ontract claims generally accrue when the contract is breached." Hoover v. Gregory, 835 S.W.2d 668, 677

9

(Tex. App. 1992) (citing Wichita Nat. Bank v. U.S. Fidelity & Guaranty Co., 147 S.W.2d 295, 297 (Tex. Civ. App. 1941) ("A cause of action arising out of contractual relations between the parties accrues as soon as the contract or agreement is breached.")). "A breach occurs when a party fails to perform a duty required by the contract." Id.

We thus conclude that Smith's breach of contract cause of action accrued no later than March 13, 2000 when Smith was named a defendant in the Louisiana suit. The legal claim by Rose Egle put Smith on notice that the Defendants allegedly had breached the Agreement by misrepresenting in Section 4.3 that Smith would acquire Tri-Tech free and clear of any claims by others. Given the valid contract and Smith's payment of the purchase price, the elements of a breach of contract claim were present -- with the possible exception of damages. See Valero Mktg., 51 S.W.3d at 351. But damages did not matter for accrual purposes because the alleged breach put Smith on notice of a legal injury -- "an invasion of [its] right," see Murphy, 964 S.W.2d at 270, to own Tri-Tech "free and clear" of any "claim[s]," see Hoover, 835 S.W.2d at 677. Therefore, Smith's breach of contract claim accrued no later than March 13, 2000 and is barred by the four-year statute of limitations. Because the breach of contract claim is barred by the statute of limitations, we need not determine whether it is also barred by res judicata, which would require us to determine whether the claim arose out of the same transaction or occurrence as Rose

10

Egle's claims in the Louisiana suit. Accordingly, we affirm the district court's grant of summary judgment in favor of Defendants on Smith's breach of contract claim.

C.

We next consider whether the district court erred in determining the accrual date for Smith's negligent misrepresentation claim. Texas has adopted the tort of negligent misrepresentation as defined by the Restatement (Second) of Torts § 552: "One who, in the course of his business, profession or employment, or in any transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests, 991 S.W.2d 787, 791 (Tex. 1999). Like breach of contract claims, negligence claims are subject to the legal injury rule. See Waxler v. Household Credit Services, Inc., 106 S.W.3d 277, 280 (Tex. App. 2003).

Here, we conclude that Smith's negligent misrepresentation cause of action also accrued no later than March 13, 2000. As of that day, Smith was on notice that it had suffered the same legal injury it suffered by the alleged breach of contract -- "an invasion of [its] right," see Murphy, 964 S.W.2d at 270, to own Tri-Tech "free and clear" of any "claim[s]." Therefore, Smith's

11

negligent misrepresentation claim accrued no later than March 13, 2000 and is barred by the two-year statute of limitations. Because the negligent misrepresentation claim is barred by the statute of limitations, we need not determine whether it is also barred by res judicata. Accordingly, we affirm the district court's grant of summary judgment in favor of Defendants on Smith's negligent misrepresentation claim.

D.

We are now ready to consider Smith's indemnity claim, the centerpiece of its appeal. The Sellers' indemnity clause appears in Section 11.1 of the Agreement, which states:

> Subject to the provisions of this Article XI and to the extent that the Damages are not covered by insurance, Sellers agree to indemnify and hold Purchaser harmless from and against the Damages in excess of $100,000 but not exceeding $2,000,000.00 resulting from or arising out of: ... (b) any misrepresentation, breach of warranty or breach or nonfulfillment of any covenants of Sellers in this Agreement, including the Schedules and Exhibits hereto.

The Agreement further defines Damages as

> all costs, judgments, good faith settlements, claims (whether or not such claims are ultimately defeated), damages, losses, penalties, fines, liabilities (including strict liability), Liens, costs and expenses, of whatever kind or nature, contingent or otherwise, attorneys' fees, costs and expenses incurred in enforcing this Agreement or collecting any sums due hereunder.

In contrast to breach of contract and negligence claims, Texas courts do not apply the legal injury rule to indemnity claims. Cf.

12

*Advent Trust Co. v. Hyder*, 12 S.W.3d 534 (Tex. App. 1999) (applying the legal injury rule to negligence and breach of contract claims but not to a common law indemnity claim). Instead, as explained by the Supreme Court of Texas, "[t]o determine the correct accrual date of an indemnity claim we look to the contract's indemnity provision." *Ingersoll-Rand Co.*, 997 S.W.2d at 207.

All indemnity provisions fall under one of two categories: those that indemnify against liabilities and those that indemnify against damages. *See id.* (citing *Tubb v. Bartlett*, 862 S.W.2d 740, 750 (Tex. App. 1993); *Russell v. Lemons*, 205 S.W.2d 629, 631 (Tex. Civ. App. 1947)). The very terms suggest an earlier date of accrual for liability indemnity agreements. Liability indemnity agreements may be called "broader," often holding the indemnitee "harmless" against "all claims" and "liabilities." *See id.* Under a liability indemnity agreement, the indemnitee's right to sue does not accrue, however, until liability becomes "fixed and certain, as by rendition of a judgment, whether or not the indemnitee has yet suffered actual damages, as by payment of a judgment." *Id.*; *see also* *Pate v. Tellepsen Const. Co.*, 596 S.W.2d 548, 552 (Tex. App. 1980) ("a cause of action for indemnity does not accrue until the judgment is either rendered or paid"). Damages indemnity agreements, on the other hand, are not as broad, and the indemnitee's right to sue does not accrue "until the indemnitee has suffered damage or injury <u>by being compelled to pay the judgment or debt</u>." *Tubb*, 862 S.W.2d at 750 (emphasis added). Accordingly,

13

under Texas law, the <u>earliest</u> possible accrual date for an indemnity agreement is the day that judgment is entered against the indemnitee, and this accrual date applies only when the indemnity clause is so broad that it constitutes a liability indemnity agreement. In contrast, the cause of action for a damage indemnity agreement does not accrue until even <u>later</u>, that is, when the indemnitee is "compelled to pay the judgment or debt." <u>See id.</u>

Here, we need not determine whether the clause at issue is a liability or damage indemnity agreement; even assuming the indemnity clause in the Agreement is a liability indemnity agreement with the earlier accrual date, Smith's indemnity cause of action did not accrue until June 1, 2004, at the earliest, after the Louisiana court entered its judgment against Smith. <u>See</u> <u>Ingersoll-Rand Co.</u>, 997 S.W.2d at 207; <u>Pate</u>, 596 S.W.2d at 552.[13] Therefore, Smith's indemnity claim is not barred by the statute of limitations or res judicata, and we reverse the district court's

---

[13] We reject Defendants' argument to the contrary, which is based on a faulty reading of <u>Tubb</u>. Defendants argue that the indemnity clause here is a damages indemnity agreement. Defendants then point to the definition of "Damages" in the Agreement, which includes "claims (whether or not such claims are ultimately defeated)," to suggest that Smith suffered just such a "claim," and therefore a "Damage," when Rose Egle asserted a legal claim against Smith on March 13, 2000. Thus, because Smith allegedly suffered a "Damage," as that term is defined in the Agreement, Defendants argue that Smith "suffered damage[s]," as required by <u>Tubb</u> to create a cause of action in a damages indemnity agreement. <u>See</u> <u>Tubb</u>, 862 S.W.2d at 750. Defendants misread <u>Tubb</u>, which specifically defines the "suffered damage[s]" that create a cause of action as the damage or injury suffered "by being compelled to pay the judgment or debt." <u>See id.</u> The Agreement's definition of Damages is not determinative.

14

grant of summary judgment in favor of Defendants on Smith's indemnity claim.[14]

IV.

For the foregoing reasons, Smith's breach of contract and negligent misrepresentation causes of action accrued on March 13, 2000 and therefore are barred by the statutes of limitation. Smith's indemnity cause of action, however, did not accrue until June 1, 2004, at the earliest, and therefore it is not barred by res judicata or the statute of limitations.  We therefore AFFIRM summary judgment in favor of Defendants on Smith's breach of contract and negligent misrepresentation claims, we REVERSE summary judgment in favor of Defendants on Smith's indemnity claim, and we

---

[14] We reject Defendants' argument that Smith is barred from bringing its indemnity claim against Daniel Rees, as trustee of the Egle Trusts, because the Egle Trusts are allegedly not bound by the Agreement.  We agree with the Defendants that the Egle Trusts are not listed in the Agreement as "Sellers," which the Agreement defines as the Egle Group and Tri-State.  However, the Agreement was signed on behalf of the Egle Group by, among others, Don Egle as the co-trustee of the Egle Trusts.  Furthermore, the other co-trustee of the Egle Trusts, Janet Harrison, signed a "Consent and Section 8.1(c) Certificate," which states:  "The signature of Don M. Egle as Co-Trustee for the Trusts on the Agreement and all documents necessary to complete the transactions contemplated by the Agreement shall be sufficient to bind the Trusts."  This document was submitted in response to the requirements of Section 8.1(c), which states:  "Purchaser shall have received a certificate of Sellers, dated as of the Closing Date and signed by Sellers' members certifying as to the fulfillment of the conditions set forth in this Section 8.1."  Section 8.1 is the general representations and warranties provision of the Agreement.  Thus, the Egle Trusts are bound by the Agreement, and particularly, to the representations and warranties made therein.

15

REMAND the case for further proceedings not inconsistent with this opinion.

AFFIRMED in part; REVERSED in part; and REMANDED.