# United States Court of Appeals
# for the Fifth Circuit

———————

No. 24-20519

———————

United States Court of Appeals
Fifth Circuit

**FILED**

May 20, 2026

Lyle W. Cayce
Clerk

DORA DOSS THOMPSON,

*Plaintiff—Appellant*,

*versus*

STATE FARM LLOYDS,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:23-CV-2322

———————————————————————

Before SOUTHWICK, HIGGINSON, and WILSON, *Circuit Judges*.

PER CURIAM:[*]

The Plaintiff, Dora Doss Thompson, brought this suit against the Defendant, State Farm Lloyds, for failing to pay a claim for hail damage to her roof. The district court granted summary judgment to State Farm Lloyds. Thompson appealed to this court. Because Thompson has not met her burden under Texas law to show the timing of her loss, we AFFIRM.

———————————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-20519

## FACTS AND PROCEDURAL BACKGROUND

State Farm began as the sole insurer of Dora Thompson's home in Cypress, Texas, on April 12, 2007. In February 2022, Thompson, concerned about recurring leaks, asked her contractor, Shingle Hut, LLC, to examine her roof. On February 11, Martin Langley, an employee of Shingle Hut, inspected the property. Three days later, the owner of Shingle Hut, Kevin Catchings, sent a letter to Thompson informing her that her home needed a complete reroofing, with an estimated cost of $44,419.05, due to damage from a hailstorm on September 28, 2021.

Based on the letter, Thompson filed a claim with State Farm for wind and hail damage from the September storm. State Farm sent a third-party contractor, Seek Now, to inspect the house. Seek Now found hail damage on a window screen and the home's back gutter system, but no hail damage to the roof itself. In a February 24 letter, State Farm informed Thompson that, based on the inspection, it estimated the covered damage to be $541.92, well below Thompson's policy deductible of $14,186. The letter also noted "additional damage not caused by hail" and listed the insurance policy exclusions for damage caused by wear and tear, corrosion, rot, settling, plants, and animals. As State Farm's estimation of the covered loss was under the policy deductible, it made no payment on the claim.

In March 2022, Thompson invoked her right of appraisal under the insurance policy. Prior to appraisal, State Farm conducted a second inspection, which found no wind or hail damage to the roof and instead noted above-average wear on the shingles, including "heavy blistering." The appraisal took place in September 2022. The umpire agreed with Thompson's appraiser and set the replacement cost value of the damage at $57,983.61 and the actual cost value at $36,803.96. Later that month, State Farm sent a letter to Thompson acknowledging receipt of the appraisal award

and reiterating that the covered losses did not exceed her policy deductible. The letter stated State Farm's "investigation revealed no accidental direct physical loss resulting from hail and/or wind damage to the dwelling roof" and provided another, narrower list of policy exclusions, namely wear and tear, corrosion, and rot.

Thompson sued State Farm in Texas state court for breach of contract, breach of the common-law duty of good faith, and multiple violations of the Texas Insurance Code. State Farm removed the case to the United States District Court for the Southern District of Texas. There, State Farm moved for summary judgment and to strike Thompson's expert, Micah Harrison. The district court granted State Farm's motion for summary judgment on all claims and dismissed its motion to strike as moot. Thompson timely appealed to this court.

## DISCUSSION

We review the grant of summary judgment *de novo*, "under the same standards the district court applies to determine whether summary judgment is appropriate." *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 809 (5th Cir. 1991). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "We may affirm a summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 258 (5th Cir. 2001).

The district court granted summary judgment on the breach of contract claim on two bases: (1) Thompson failed to provide evidence of hail damage on the date of loss that exceeded the policy deductible and (2) Thompson failed to segregate her losses under the concurrent cause doctrine. We agree with the district court on the first issue and, therefore,

do not reach the second. Additionally, we hold that Thompson's extra-contractual claims fall with her breach of contract claim.

In this diversity case, Texas law applies. *See Weaver v. Metro. Life Ins. Co.*, 939 F.3d 618, 626 (5th Cir. 2019). "In Texas, insurance policies are contracts and are controlled by rules of contract construction." *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000). "[W]hen an insurance policy is ambiguous or inconsistent, the construction that would afford coverage to the insured must govern." *Id.*

## I.    Breach of Contract

The elements of a breach of contract in Texas are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007)).

Thompson contends that the district court erred in granting summary judgment on her breach of contract claim. She insists the summary judgment evidence was sufficient to establish a *prima facie* case of coverage.

Under Texas law, an insured has the burden of making a *prima facie* case of coverage. *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 603 (Tex. 2015). To make that initial showing, a plaintiff must prove "a covered injury or loss was incurred at a time covered by the policy and incurred by a person whose injuries are covered by the policy." *Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 400 (Tex. 2016).[1] "It is a time-honored

---

[1] In briefing, Thompson substitutes the term "fortuitous loss" for "covered loss." This is a distinction without a difference for the purposes of this case, as a panel of this court accurately explained in an unpublished opinion. *See Hamilton Props. v. Am. Ins. Co.*,

principle that the insurer's obligation to pay is contingent on a covered loss occurring during the policy period." Jordan R. Plitt et al., Couch on Insurance § 102:2 (3d ed. 2025). In other words, establishing the "time of the insured's damages is a precondition to any coverage." *See Employers Cas. Co. v. Block*, 744 S.W.2d 940, 944 (Tex. 1988), *disapproved of on other grounds by State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 714 (Tex. 1996).

Our analysis is simplified by assuming without deciding that Thompson made a showing of a loss from a covered cause that exceeded the policy deductible. Thompson still must present evidence that the loss occurred at a time covered by her policy. Thompson contends she has met this burden by establishing that State Farm has continuously insured her home under a single policy number from the time that it was built. In essence, "[t]he policy was . . . in effect whenever the damage to the roof occurred."

This is an unusual, if not entirely novel, proposed method of satisfying Thompson's burden. Thompson does not cite any authority in which a court credited such an argument, *i.e.*, treated the entire period of coverage as a single, seamless policy. Nevertheless, we address the argument. Thompson's theory proceeds something like this: (1) she repeatedly extended her home insurance contract each year and (2) the damage occurred at some point during the span of the contract; therefore (3) she has shown that the loss occurred during the policy period. This chain of logic holds only if Thompson's renewal of her home insurance coverage extended the first contract instead of creating a series of successive, one-year contracts.

---

643 F. App'x 437, 441 (5th Cir. 2016) (stating that even under an all-risk policy "the insured must show that its claimed damages are covered").

No. 24-20519

There is a long-standing Texas rule addressing this issue:

> [A] renewal of a policy constitutes a separate and distinct contract for the period of time covered by the renewal, except where the provisions of the extension certificate show that the purpose and intention of the parties was not to make a new contract but was to continue the original contract in force.

*Great Am. Indem. Co. v. State*, 229 S.W.2d 850, 853 (Tex. App.—Austin 1950, writ ref'd). "Unless the parties express in 'clear and unambiguous terms' in the renewal document that they do *not* intend to make a new contract," the renewal of an insurance policy is a new, separate contract. *Berry v. Tex. Farm Bureau Mut. Ins. Co.*, 782 S.W.2d 246, 248 (Tex. App.—Waco 1989, writ denied) (citation omitted). We find application of this Texas precedent appropriate here.[2]

In considering whether the parties expressed a different intent, we find in the relevant policy the statement that the "Effective Dates" of the coverage were "APR 12 2021 to APR 12 2022." It follows that both parties were on notice that the contract covered only a one-year period. Each year, Thompson could have decided against renewing the policy and chosen a new insurer. Instead, Thompson chose to renew and form a new contract. There is no evidence that the parties intended to depart from what we consider the

---

[2] A leading treatise endorses this rule:

> [I]t has been held that the rule that a renewal policy constitutes a separate and distinct contract for the period of time covered by the renewal does not apply where the extension agreement shows a contrary intention as by stipulating that the original agreement "continues in force." . . . [W]here a policy clearly stated that it terminated at the end of the policy period, a new contract with a new effective date was created each time the policy was renewed.

Jordan R. Plitt et al., Couch on Insurance § 29:33 (3d ed. 2025) (footnotes omitted).

6

default rule on renewal and instead intended to extend the original contract. That means the "policy did not furnish continuous coverage from its original date to the date of the [damage] but was renewed for each successive policy period." *Safeway Managing Gen. Agency for State & Cnty. Mut. Fire Ins. Co. v. Cooper*, 952 S.W.2d 861, 867 (Tex. App.—Amarillo 1997, no writ).

An essential element of a breach of contract claim in Texas is identifying the contract or contracts that were breached and showing their effectiveness at the relevant time. *See TRO–X, L.P. v. Anadarko Petroleum Corp.*, 548 S.W.3d 458, 465 (Tex. 2018) (explaining that a plaintiff must "prov[e] the existence of a valid contract in a breach of contract case"). Here, because each one-year policy period is a separate contract, Thompson must identify which period, and corresponding contract, the loss occurred under. Indeed, the one-year policy in the record contemplates changes to future terms by stating that the "policy will be renewed automatically subject to the premiums, rules, and forms in effect for each succeeding policy period." Without evidence on which policy was in effect at the time of loss, it is impossible to know what terms governed the investigation, submission, and payment of the claim.

Thompson's contention that she need not supply a date of loss because her home has been continuously insured is thus incorrect.

We recognize that this is not the reasoning the district court applied in its grant of summary judgment. As we have mentioned, this court "may affirm a summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Holtzclaw*, 255 F.3d at 258. While Thompson has not identified a particular date of loss in her briefing, we also consider whether there is evidence in the record as to Thompson's date of loss.

No. 24-20519

In her initial pleadings for this lawsuit, Thompson asserted that the date of the hailstorm that damaged her roof was September 28, 2021. This is also the date she used in her initial claim with State Farm. In her briefing before this court, however, Thompson does not press the September date of loss. This is for good reason: There is no direct evidence in the record that a hailstorm struck Cypress, Texas on September 28, 2021.[3] There is also little circumstantial evidence of the storm. Thompson testified at her deposition that her home had a history of leaks, including at least two that required repairs: the first, prior to Hurricane Harvey in 2017, and the second on June 22, 2021. Between June 2021 and February 2022, when Thompson asked her contractor to check on her roof, the home had suffered no new leaks or water damage that might have sprung from the September storm.

The testimony of Thompson's expert witness, Micah Harrison, is equally unhelpful. Harrison concluded after a January 2024 inspection that hail damage to Thompson's roof "appear[ed] to be only a few years old but could be as recent as a few months old" based on his observation that "the impacted areas d[id] not yet show exposed fiberglass." According to Harrison, the hail impact areas were "not uniform in size" and it was "possible that the impacts originate[d] from a single storm that had a variation of sizes or could be the result of more than one event." At his deposition, Harrison added that the damage could have occurred "slightly before, maybe slightly after" the September 28, 2021 storm and agreed that none of the damage appeared to be recent storm damage.

_____

[3] The only direct evidence of the storm before the district court was a hail history report provided as part of an estimate calculated by Shingle Hut. The district court struck the Shingle Hut report and estimate as testimony by an un-designated expert witness (either Martin Langley or Kevin Catchings). Thompson did not contest the ruling before this court and has, therefore, forfeited any challenge she might have. *Calderon-Ontiveros v. I.N.S.*, 809 F.2d 1050, 1052 (5th Cir. 1986).

Notably absent from Harrison's testimony, or the record, is evidence tying the damage on Thompson's roof to any *particular* storm or storms. In fact, Harrison made clear that he was not "testifying that th[e] date of loss is correct, necessarily." Harrison elaborated that the damage "could have happened . . . after the date of loss, but before [he] inspected it or before the date of loss."

This evidence is inadequate to raise a genuine dispute of material fact. "Unconfirmed rumors" of the time of loss are not enough to satisfy an insured's burden. *See New Hampshire Ins. Co. v. Martech USA, Inc.*, 993 F.2d 1195, 1200 (5th Cir. 1993). Harrison's opinion was that the damage occurred at some time across a several-year stretch — "possibly" from one storm, "possibly" from several. That terminology is only a supposition as to the time of Thompson's loss.

Even if we were to credit the time range proposed by Harrison, Thompson has submitted policy documents only for the April 2021 to April 2022 policy period. In Texas, a "plaintiff seeking recovery under an insurance policy[] must prove . . . those provisions that allow recovery." *Texas Farmers Ins. Co. v. Murphy*, 996 S.W.2d 873, 879 (Tex. 1999). There is no record evidence that a loss outside that period would be covered by any policy in effect at that time.

This is not to say that Thompson must identify a single hailstorm or a precise date of loss to meet her burden at summary judgment. Hailstorms can present unusual evidentiary difficulties in pinpointing the time of damage. Unless residents regularly examine the roofs of their homes for hail damage, it can take some time to discover a leak when one occurs. Indeed, Texas law may well permit an insured's burden on time of loss to be met with evidence showing that one of several storms occurring within a policy period must have caused the loss. *Cf. Valstay, LLC v. Tex. Windstorm Ins. Ass'n*,

No. 24-20519

No. 13-19-00379-CV, 2021 WL 2371759, at *6 (Tex. App.—Corpus Christi–Edinburg June 10, 2021, pet. denied) (mem. op). Alternatively, perhaps several storms across several policy periods lashed the insured's roof and caused the covered damage. We hold only that, on this spare record, the fact of hail damage itself is not enough to evidence that a covered loss happened within the policy period.

## II. *Extra-Contractual Claims*

Thompson also contends that the district court improperly granted summary judgment on her claims under the common-law duty of good faith and fair dealing, Texas Insurance Code §§ 541.060(a)(1)–(3),(7), and 542.058.

When an insured has not raised an independent injury beyond the breach of an insurance contract, these extra-contractual claims fall with the breach of contract claim. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489 (Tex. 2018) ("An insured cannot recover *any* damages based on an insurer's statutory violation if the insured had no right to receive benefits under the policy and sustained no injury independent of a right to benefits."); *Advanced Indicator & Mfg., Inc. v. Acadia Ins. Co.*, 50 F.4th 469, 477 (5th Cir. 2022) (noting that "breach of contract and bad faith claims [are] 'largely interwoven'" under Texas law (quoting *USAA*, 545 S.W.3d at 489)).

Because Thompson has not alleged an independent injury, the district court did not err in granting summary judgment on Thompson's extra-contractual claims.

AFFIRMED.